**CLOUGHERTY v. JAMES VERNOR CO.**

**JAMES VERNOR CO. v. CLOUGHERTY.**

Nos. 11175, 11176.

United States Court of Appeals
Sixth Circuit.

Feb. 19, 1951.

Arthur J. Hass, Detroit, Mich. (Arthur J. Hass, Detroit, Mich., on the brief), for appellant and cross-appellee.

Wilber M. Brucker, Detroit, Mich. (Wilber M. Brucker, Detroit, Mich., on the brief; Clark, Klein, Brucker & Waples,

Detroit, Mich., of counsel), for appellee and cross-appellant.

William S. Tyson, Bessie Margolin, William A. Lowe, and Kay Kimmell, Washington, D. C., Aaron A. Caghan, Regional Atty., Cleveland, Ohio, on the brief for Maurice J. Tobin, Secretary of Labor, United States Dept. of Labor, as amicus curiae.

Before HICKS, Chief Judge, and SIMONS and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

This appeal and cross-appeal present important questions arising under the Fair Labor Standards Act of 1938, 29 U.S.C., § 201 et seq. 29 U.S.C.A. § 201 et seq.[1]

Plaintiff brought an action for overtime compensation under § 216(b), 29 U.S.C., 29 U.S.C.A. § 216(b). It is conceded that he and the other employees involved have worked more hours than those specified in the Act and have not received statutory overtime compensation. Defendant's contention, which in the main was upheld by the District Court, is that the work done was either not covered by the statute or was exempt from its operation.

A preliminary question arises out of a motion filed by defendant to strike from the bill of complaint 177 names of its employees attached to the complaint by schedule. This list was alleged to be of employees similarly situated to the plaintiff. The court states that in open court plaintiff admitted that he had no authority to act for the 177 employees named, and claimed that at the trial of the case he intended to prove through defendant's books the amounts of money due to each of these employees. This is not denied. Defendant does not controvert the fact that the employees listed are similarly situated with plaintiff, but contends that it can not be sued on behalf of persons who have not authorized plaintiff to represent them. The District Court granted the motion to strike these names from the complaint. Names of 40 employees who had specifically authorized plaintiff to represent them

were later appended to the complaint. As to the other 137 employees whose names were stricken out plaintiff claims that the court's ruling on the motion was erroneous.

The ruling was correct. The statute involved, § 216, 29 U.S.C., 29 U.S.C.A. § 216, provides that an action to recover liability under the Fair Labor Standards Act "may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." The purpose of this statutory provision, as held by a number of District Courts, is to facilitate intervention by other employees and to allow their representation by the plaintiff for the purpose of avoiding a multiplicity of actions. The suit authorized by § 216 is not a proper class suit within Rule 23 of the Federal Rules of Civil Procedure, 28 U.S.C., 28 U.S.C.A.; Lofther v. First National Bank of Chicago, D.C., 45 F.Supp. 986. It does not permit a plaintiff to represent another employee without specific authorization, and if it did so it doubtless would be subject to constitutional attack. The employee thus represented without his consent might be deprived of due process of law. He could not be bound by any judgment rendered, and yet his case, or some portion of it, might have been tried in the proceedings. Moreover, the defendant has a constitutional right to know who is suing it and the nature of the action against it. To be confronted by a number of claims at the trial, without an opportunity to properly prepare to contest them, would be plainly unfair. Abram v. San Joaquin Cotton Oil Co., D.C., 46 F.Supp. 969, 977. Because of these basic considerations the ruling in cases so far adjudicated has been that under the Fair Labor Standards Act the plaintiff has no right without specific authorization to represent an employee not joined as a plaintiff. Fowkes v. Dravo Corp., D.C., 62 F.Supp. 361; Pentland v. Dravo Corp., 3 Cir., 152 F.2d 851. Cf. Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 705 note, 65 S.Ct. 895, 89 L.Ed. 1296.

1. The parties will be designated as in the court below.

Five classes of defendant's employees are involved in this suit, namely, (1) city drivers; (2) city salesmen's helpers; (3) highway drivers; (4) one shipping-room foreman; and (5) one chief router. All of those in classifications 1, 2, and 3 since January 1, 1945, have been paid by defendant in accordance with the provisions of the Fair Labor Standards Act, but under a specific reservation that the defendant is not legally liable to make these payments. The period involved in the suit covers March 23, 1939, to December 31, 1944.

Defendant, a manufacturer of ginger ale, does a large business throughout the State of Michigan and in interstate commerce. It has over 6,000 wholesale outlets in Detroit alone, 8 branch warehouses in Michigan, and 8 branches outside the state. Its out of state transactions amount to some 14% to 20% of its business.

The ginger ale is delivered in tanks or bottles and the present controversy is concerned with distribution by the latter method. The bottles in question are manufactured for defendant by another corporation, operating outside the state. The ingredients of the ginger ale, consisting of ginger ale extract, carbonated water, and syrup, when bottled and tightly capped, are placed in a container and agitated or spun in order that the product may be properly mixed. The filled bottles are then placed in cases and conveyed to a shipping room from which they are distributed. The city driver, under the order of the shipping room foreman, delivers the filled cases to the local outlets in Detroit and receives back from the retail outlets about as many empties as he delivers. On returning to the plant the body of the truck driven by the city driver is lifted from the chassis by a crane and swung into the plant, and the bottles are unloaded by other employees and placed in a stockpile which includes bottles used in interstate commerce. It is conceded that the bottles used for interstate and intrastate commerce were intermingled. From the stockpile the bottles are taken to be washed, filled with ingredients, spun or twirled, and then cased for delivery again.

Certain city drivers and helpers also deliver filled bottles to the boat dock companies along the Detroit River, to boats operating on the Great Lakes, and to manufacturing places engaged in interstate commerce, and pick up the empties for return to the warehouse.

Defendant also sells its product through city salesmen who are independent contractors soliciting orders for defendant. These salesmen have helpers paid by defendant, whose duty is to assist in intrastate deliveries of filled and collection of empty cases. The highway drivers deliver the ginger ale to the branch warehouses in Michigan and to eight warehouses in Ohio, New York, and Pennsylvania. They pick up the empties and help to unload them at the defendant's plant. Sometimes the highway driver works full week periods in exclusively intrastate or interstate deliveries. He is assisted in this work by the helpers of the city salesmen.

The shipping room foreman has charge of loading the trucks both in interstate and intrastate delivery. The chief router makes up the routes for all city deliveries.

The District Court held that the city drivers and city salesmen's helpers performed a purely local operation and were not covered by the Act; that the highway drivers were exempt from coverage during the work weeks in which they drove intrastate exclusively; and that the shipping room foreman and chief router were exempt upon the ground that one was an executive, the other an administrator. All of these rulings are attacked as erroneous by the plaintiff, as well as the disallowance by the District Court of additional liquidated damages and of interest on the amount allowed from the date of accrual of the claim.

The defendant filed a cross-appeal with reference to the city drivers who deliver to the docks for vessels in interstate commerce, held by the District Court to be covered by the Act, and also from the ruling on interest. The District Court allowed interest from date of the rendition of the opinion but defendant contends that it should have been allowed from the date of entry of the judgment.

■ It is contended that the city drivers, the helpers, and the highway drivers who make local deliveries and pickups are engaged in the production of goods for commerce under § 3(j) of the Act, which provides that an "employee shall be deemed to have been engaged in the production of goods" if he is employed in "handling, transporting, or in any other manner working on such goods," or if he is engaged "in any process or occupation necessary to the production thereof."

Concededly the city drivers and helpers transport no ginger ale which goes in to interstate commerce and the highway drivers for certain definite periods also engage in a purely local distribution. But because these employees return the bottles to the stockpile from which they are drawn for use in interstate commerce, it is contended here both by plaintiff and by the Secretary of Labor as amicus curiae that the purely local driver is engaged, if not in working on goods for commerce, certainly in an occupation necessary to the production of ginger ale.

We think the District Court correctly ruled that these drivers are not engaged in the production of goods for commerce. The statutory definition of goods in § 3(i) of the Act reads as follows: " 'Goods' means goods (includinng ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof."

The "goods," so defined, taking into consideration the purpose of the Act, we think are the goods made, worked on, or handled by the employer in its business as a subject of commerce, in this case, the ginger ale. Since defendant neither makes nor sells the bottle, we conclude that article is not the "goods" contemplated by the Act.

■ But a closer question arises as to whether employees who perform a local delivery and pickup at retail outlets, returning the empties to the plant for a use which is partially interstate, are engaged in an occupation necessary to the production of goods, that is, ginger ale. The District Court found that the manufacturing process "and route of the bottle, whether new or one that had been returned after its contents consumed, begins when it is placed on a conveyor which carries it to the soaking and rinsing room where it is cleaned, sterilized and rinsed, then to the syrup machine where extract and syrup are added, to the filling room for the carbonated water, the crowning machine where it is capped, and then to the 'spinner' where the ingredients are properly agitated. The next and final steps are the placing of the bottles in cardboard cases and transferred by a conveyor to the stock room ready for shipment." The court also found that in the twirling process in which the bottle is spun or twirled in order to produce a proper mixture of ingredients "the bottle became part of the machinery." The bottle therefore is necessary not merely to hold the product, but actually to produce it.

But the controlling test as to these drivers is not how the bottle is used in the plant, but how the drivers handle it. Walling v. Jacksonville Paper Co., 317 U.S. 564, 571, 63 S.Ct. 332, 87 L.Ed. 460. Their handling of the bottles not only precedes the process of producing the ginger ale but is no part of the production. The city drivers do not even unload the bottles at the plant, and neither they nor the helpers nor the highway drivers cooperate in the washing, the blending of the ingredients, the twirling, or any other part of the process which ties in with the production of the ginger ale. In Roland Electrical Co. v. Walling, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383, the employees held to be covered by the Act actually worked on the machines which produced the goods. In Farmers Reservoir & Irrigation Co. v. McComb, 337 U.S. 755, 69 S.Ct. 1274, 93 L.Ed. 1672, the employees held subject to the Act operated the machinery controlling the water supply which became an integral part of the crops produced. Here the purely intrastate delivery of filled and pickup of empty bottles does not have such a close and immediate tie with the process of production as to

enable the court to hold these drivers to be engaged in an occupation necessary to the production of goods for commerce. The test is the character of their activities, Walling v. Jacksonville Paper Co., supra, and their activities constitute a separate local distribution. Cf. 10 East 40th Street Building, Inc., v. Callus, 325 U.S. 578, 65 S.Ct. 1227, 89 L.Ed. 1806. If we "assume that handling for transit purposes is handling in production, we encounter results which we think Congress could not have intended." Western Union Telegraph Co. v. Lenroot, 323 U.S. 490, 65 S.Ct. 335, 342, 89 L.Ed. 414.

■ The highway drivers who made deliveries partly within and partly without the State of Michigan, as to the interstate transportation are not subject to the provisions of the Fair Labor Standards Act because their activities fall within and are governed by § 204 of the Motor Carrier Act, 1935, 49 U.S.C.A. § 304. Levinson v. Spector Motor Service, 330 U.S. 649, 67 S.Ct. 931, 91 L.Ed. 1158. Plaintiff has withdrawn all claims for such drivers. For the reasons stated above as to the city drivers, in the work weeks in which the highway drivers do exclusively intrastate service they fall within the exemption of § 213(b) (1) of the Fair Labor Standards Act.

■■ The shipping room foreman, Vetor, was rightly held to be an executive within the purview of the administrator's regulations, § 541.1. His primary duty consisted of the management of a subdivision of defendant's establishment. He customarily and regularly directed the work of some 30 employees. He had the authority to hire and discharge. He received more than $30 a week. He customarily and regularly exercised discretionary powers and his hours of manual labor did not exceed 20% of the time worked by the men under him. Like, the chief router, was claimed by defendant to be an administrator, and the court held that this claim was sustained by the evidence. We think this conclusion was correct. The tests of an administrator stated in § 541.2 are in the disjunctive. Like was compensated considerably more than $200 a month, and he performed under general supervision responsible non-manual office work directly related to management along specialized lines requiring special training and experience, and requiring the exercise of discretion and independent judgment.

■ The city drivers, the highway drivers, and city helpers, who participated in the delivery of ginger ale from defendant's plant to the docks of vessels that ply the Great Lakes were rightly considered to be engaged in interstate commerce and the District Court properly held that any one engaged in interstate commerce for 20% of the work week would fall under the Act.

■ The refusal by the District Court to grant liquidated damages for the nonpayment of overtime compensation to those employees entitled thereto did not constitute an abuse of discretion. No circumstance of bad faith, malice or oppression existed. The liquidated damages were denied under § 11 of the Portal-to-Portal Act of 1947, 29 U.S.C.Supp. III, § 260, 29 U.S.C.A. § 260, upon the ground that the employer had acted in good faith and with reasonable ground for believing that its conduct was not a violation of the Fair Labor Standards Act. We can not say that this finding was manifestly erroneous.

■ However, we think that the court erred in the allowance of interest from the date of the rendition of the opinion, namely, August 1, 1947. Plaintiff contends that interest should have been allowed from the date the claims accrued, and the defendant filed a cross-appeal, claiming that interest should be allowed only from the date of the judgment.

The Fair Labor Standards Act makes no provision for interest, and the Supreme Court, in Brooklyn Savings Bank v. O'Neil, supra, held that interest is not recoverable in judgments obtained under § 16(b) of the Act. The court, 324 U.S. at page 715, 65 S.Ct. 895, pointed out that to allow interest on liquidated damages would be to grant a double compensation for damages; but the fact remains that the Act does not provide for the imposition of interest.

294

Section 811, 28 U.S.C. [1948 Revised Judicial Code, 28 U.S.C.A. § 1961], provides that interest shall be calculated from the date of the judgment. We conclude that interest should be allowed here in the amount set by the statutes of Michigan, § 19.11, M. S.A., Comp.Laws 1948, § 438.51, namely, 5%, and that the judgment should be modified to allow interest from the date of the rendition of the judgment.

As modified, the judgment of the District Court is affirmed. The case is remanded for further proceedings in accordance with this opinion.