James P. MITCHELL, Secretary of Labor, U. S. Department of Labor, Appellant,

v.

HYGRADE WATER & SODA COMPANY, a Corporation, Appellee.

James P. MITCHELL, Secretary of Labor, U. S. Department of Labor, Appellant,

v.

PEPSI–COLA BOTTLERS OF ST. LOUIS, INC., a Corporation, Appellee.

Nos. 16483, 16484.

United States Court of Appeals Eighth Circuit.

Dec. 12, 1960.

Woodrough, Circuit Judge, dissented.

■■■■■■■■■■■■

———◆———

Jacob I. Karro and Judah Best, Attys., U. S. Dept. of Labor, Washington, D. C., for appellant. Harold C. Nystrom, Acting Sol. of Labor, and Bessie Margolin, Asst. Sol., U. S. Dept. of Labor, Washington, D. C., and B. Harper Barnes, Regional Atty., U. S. Dept. of Labor, Kansas City, Mo., were with Jacob I. Karro and Judah Best, Washington, D. C., on the brief.

Charles H. Rehm, of Dyer, Rehm & Weitzman, St. Louis, Mo., for appellees.

Before SANBORN, WOODROUGH, and MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

The Secretary of Labor, refusing to be controlled by the teachings of the courts in Clougherty v. James Vernor Co., 6 Cir., 187 F.2d 288, certiorari denied 342 U.S. 814, 72 S.Ct. 28, 96 L.Ed. 616, and Tobin v. Double Cola Bottling Company (N.D. of Ga.1953), 23 Labor Cases 67,511,[1] (not officially reported) instituted these actions against Hygrade Water & Soda Company, and Pepsi-Cola Bottlers of St. Louis, Inc., hereinafter singularly referred to as "Hygrade" and "Pepsi," and collectively as "appellees," seeking to enjoin them from violating §§ 15(a) (1), 15(a) (2) and 15(a) (5) of the Fair Labor Standards Act of 1938. As to Hygrade, the complaint alleged that it had violated § 6 of the Act, which fixes minimum wages; § 7 of the Act which deals with overtime wages and maximum hours, and § 11(c), which requires the keeping of adequate records. As to Pepsi, the complaint alleged that it had violated §§ 7 and 11(c). Sections 6, 7, 11(c) and 15 appear as §§ 206, 207, 211(c) and 215 of Title 29 U.S.C.A., respectively.

The trial court denied the relief sought and dismissed the complaints, and the Secretary appeals.

The uncontroverted facts as found by the trial court disclose that appellees are affiliated Missouri corporations having their offices, plant and warehouse at the same address in St. Louis, Missouri. Pepsi produces a bottled carbonated beverage known as "Pepsi-Cola," and distributes some of its product directly through vending machines in the State of Missouri for local consumption. Hygrade is engaged in the production, and also in the sale and distribution of bottled beverages, and a substantial portion of Pepsi's production is sold through Hygrade. Approximately 10% of Hygrade's sales, including Pepsi-Cola, are to Illinois distributors, who in turn distribute to retail outlets in Illinois.

Certain employees of Pepsi service the vending machines in Missouri. These employees drive trucks, previously loaded by other employees, to the various vending machine locations in Missouri, and fill the machines, collect the money, remove and place the empty cases and bottles on the trucks and return to the plant where the empty bottles and cases are removed by other employees.

Hygrade employs approximately 50 persons as drivers' helpers, who assist the driver-salesmen in making deliveries to outlets in the State of Missouri; they unload the filled bottles and cases at the customers' premises and collect empty bottles and cases from such premises and place them on the trucks. The helpers are not required to report to the plant in the morning or return thereto at the end of the day's work. At their convenience, they may meet the truck at the first stop along the route and abandon it at the last stop. At no time do any of the trucks, the truck drivers or drivers' helpers leave the State of Missouri.

Many of the empty bottles picked up by the employees referred to are reused by

---

1. In Clougherty and Tobin the courts held that certain handlers of bottles were excluded from coverage afforded by the Act. Although on all fours with these cases factually, the Secretary insists that Clougherty and Tobin are "erroneous" and "not binding in this Court."

appellees in the production, distribution and sale of the beverages. The returned empty bottles are unloaded from the trucks by warehouse employees, and placed in storage where they remain until needed. The bottles returned for reuse are not segregated as to destination after refilling, and approximately 10% of bottled beverages sold in Illinois are contained in bottles taken from the general supply of bottles available. The sales to Illinois distributors are actually made in Missouri, and the merchandise is picked up in Missouri by Illinois distributors.

The production of the beverage begins when a new or returned bottle is placed on a conveyor, rinsed, sterilized and inspected. None of the employees here involved performs any duties with respect to placing empty or filled bottles in storage at the plant, nor with the manufacturing process in the plant. They transport no beverage that goes into interstate commerce, do not handle the bottles while they are in the process of being filled, have never gone on the road for the purpose of picking of empties and have not gone from one outlet or customer to another solely for that purpose.

The drivers' helpers are paid $5 per day plus a commission of two and one-half cents per case of beverage sold. The drivers delivering to the vending machine are paid $80 per week, which is in accord with the terms of a union contract.

Neither of the appellees is engaged in the business of buying, selling, manufacturing or dealing in bottles, neither has shipped any empty bottles out of the State of Missouri, and with the exception of the vending machine drivers and drivers' helpers, they are complying with all the provisions of the Fair Labor Standards Act.

As observed at the outset, the relief sought is an injunction. While the issue is raised that the Secretary failed to prove that appellees had violated the minimum wage and maximum hours provisions, Title 29 U.S.C.A. §§ 206, 207, concededly, appellees did not maintain adequate records as required by § 211(c), and this alone would entitle the Secretary to injunctive relief if the employees come within the ambit of the Act.

A delineation of the issues presented reveals just what the Secretary *is* and *is not* pressing for determination. He *does not* contend that the activities of the drivers and drivers' helpers are *in* commerce, as was found in Clougherty v. James Vernor Co., supra, 187 F.2d at page 293, of some drivers who delivered the bottled beverage in Michigan to boats operating on the Great Lakes, and as was found of the employees who actually loaded and unloaded beverages from interstate freight cars in Young v. Caldarera (E.D. of Ark.1954), 12 WH Cases 217 (not officially reported), or otherwise handled empty bottles which moved in interstate commerce, as in Stewart-Jordan Distributing Co. v. Tobin, 5 Cir., 210 F.2d 427, certiorari denied, Stewart-Jordan Co. v. Mitchell, 347 U.S. 1013, 74 S.Ct. 866, 98 L.Ed. 1136. He *does* contend (a) that the instant employees are engaged in the production of goods *for* commerce within the meaning of the Act, or (b) if not engaged in production of goods for commerce, they are at least employed in a "closely related process or occupation directly essential to" such production within the second part of the definition of "production" found in § 203(j).[2]

2. Title 29 U.S.C.A. § 203(i) defines "goods" to mean: "goods, * * * wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, * * *."

Section 203(j) defines "produced" to mean: "produced, manufactured, * * handled, or in any other manner worked on in any State; and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing * * * handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any State."

The trial court held that the "goods" within the meaning of the Act is the carbonated beverage and not the bot-

The question underlying contention (a) is whether the empty bottles handled by the instant employees are "goods" within the statutory meaning of that term. If, as the Secretary urges, they fall in that category, then we must consider if the activities of these employees are within the ambit of the statutory definition of "produced" inasmuch as the handling of the bottles, i. e., retrieving the empties and placing them on the trucks, would not in the ordinary sense be understood to mean "producing" goods. Conversely, if the bottles are not "goods," it will be unnecessary to determine whether the "handling" herein constituted "production."

Seeking to gain sanction of his position, the Secretary argues that the bottle is an intrinsic part of the commodity (beverage) which appellees produce and sell; that the bottle is an indispensable and integral part of its contents, so that the bottle and beverage together constitute the "goods" within the literal terms of the § 203(i) definition. To sustain his argument, we are cited to cases holding that cartons, boxes, or other containers, were "goods," e. g. Enterprise Box Co. v. Fleming, 5 Cir., 125 F.2d 897, certiorari denied Enterprise Box Co. v. Holland, 316 U.S. 704, 62 S.Ct. 1312, 86 L.Ed. 1772; Dize v. Maddrix, 4 Cir., 144 F.2d 584, affirmed sub nom. Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296.

We do not regard these cases as controlling or dispositive of our problem. Here it stands uncontroverted that appellees neither manufacture nor deal in bottles as such. As pointed out by the trial court in the Clougherty case, supra, D.C., 74 F.Supp. 364–368, it is this very circumstance that renders the foregoing authorities which deal with containers clearly distinguishable. The bottles used by appellees only become a part of their actual production process when they are removed from storage and placed upon the production line.

Additionally, the Secretary places emphasis on the cost of new bottles. It appears that appellees pay approximately 6½ cents for each new bottle, and that they make a charge of 2 cents a bottle and 12 cents per empty case, or a total of 60 cents to each customer. This circumstance does not, in our opinion, afford proof that appellees are dealing in bottles. The record conclusively demonstrates that this charge for the bottles and empty cases is in reality a deposit exacted for the purpose of encouraging the return of the bottles to appellees.

Cases which involved handling or processing of the actual ingredients of goods are likewise clearly distinguishable. See Mitchell v. Hooper Equipment Company, 5 Cir., 279 F.2d 893, (employees who mined rock, which was processed into cement used for construction of interstate facilities); Mitchell v. Metals Transportation, D.C.Wyo., 173 F.Supp. 887, (employees transporting ore from mine to processing plant); Walling v. Comet Carriers, 2 Cir., 151 F.2d 107, certiorari dismissed 328 U.S. 819, 66 S.Ct. 1007, 90 L.Ed. 1600, (transportation of partially completed garments, buttons, trimmings, etc.); Mitchell v. Jaffe, 5 Cir., 261 F.2d 883, (employees who handled and stripped junked automobiles, later sold and processed into steel products).

Considering the purposes of the Act we must rule that the "goods" contemplated by the Act are "the goods made, worked on, or handled by the employer in its business as a subject of commerce," and since appellees neither make nor sell the bottle, we are in full accord with the trial court's conclusion that the bottle is not the goods contemplated by the Act. See Clougherty v. James Vernor Co., supra, 187 F.2d at page 292.

We next turn to the alternate contention—were these employees engaged "in any closely related process or occupation directly essential to" the production of

tles; that the activities of the vending machine drivers and the drivers' helpers in handling and transporting empty bottles do not constitute a "production" of "goods" within the meaning of the Act;

nor are the employees engaged in a closely related process or occupation directly essential to the production of the beverage within the meaning of the Act.

goods? This question once more brings into focus the 1949 amendment to § 3(j), § 203(j) of Title 29 U.S.C.A. of the Act.[3] In Mitchell v. H. B. Zachry Co., 362 U.S. 310, 80 S.Ct. 739, 4 L.Ed. 2d 753, decided April 4, 1960, the Supreme Court, after exhaustive discussion and analysis, concluded that the change in phraseology was designed to limit coverage under the Act, and it denied coverage as to employees who were constructing a dam, from which impounded water would be supplied to consumers, some of whom, accounting for 40%–50% of the water, were engaged in production of goods for commerce. In delineating the three areas of coverage, which may be said to be (a) activities determined to be *in* commerce; (b) production of goods *for* commerce, and (c) any closely related process or occupation directly essential to the production of goods for commerce, the Court stated, 362 U.S. at pages 316–317, 80 S.Ct. at pages 739, 744:

"Furthest removed from 'commerce' is employment not 'in' production 'for' commerce but in an activity which is only 'related' to such production. In applying this provision, we have necessarily borne in mind that it is furthest removed in the scheme of the statute from the hub of the national interest in 'commerce' upon which a limited displacement of state power is predicated.

"The amendment of § 3(j) in 1949 did not alter the basic statutory scheme of coverage, but did reinforce the requirement that in applying the last clause of the section its position at the periphery of coverage be taken into account as a relevant factor in the determination. In revising coverage Congress turned only to the last clause of the section, which it evidently continued to regard as marking the outer limits of applicability. The amendment substantially adopts the gloss of Kirschbaum to indicate the scope of coverage of activities only 'related' to production. But examination of its history discloses that in adopting that gloss the purpose of Congress was not simply to approve everything done here and in the lower courts in what purported to be specific applications of that inevitably elusive formulation. While the approach of Kirschbaum was confirmed, the change manifests the view of Congress that on occasion courts, including this Court, had found activities to be covered, which the law-defining body deemed too remote from commerce or too incidental to it."

■■ Being mindful that the answer to the question must be reached by consideration of the activities of the employees and not of the business of the employer, Kirschbaum Co. v. Walling, 316 U.S. 517, 524, 62 S.Ct. 1116, 86 L.Ed. 1638; Walling v. Jacksonville Paper Co., 317 U.S. 564, 571, 63 S.Ct. 332, 87 L.Ed. 460; Mitchell v. Hooper Equipment Company, 5 Cir., 279 F.2d 892, 896; Clougherty v. James Vernor Co., supra, 187 F.2d at page 292; Parks v. Puckett, D.C.W.D. Ark., 154 F.Supp. 842, 849, and that "remoteness of a particular occupation from the physical process is a relevant factor in drawing the line," 10 East 40th St. Bldg. v. Callus, 325 U.S. 578, 583, 65 S.Ct. 1227, 1229, 89 L.Ed. 1806, we are impelled to hold that the handling of the empty bottles by the drivers and drivers' helpers is not an activity "closely related" or "directly essential to" the production of the beverage for commerce. Their handling of the bottles is no part of the production of the beverage—they play no

**3.** Prior to the 1949 amendment § 203(j) provided that "an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing * * * or in any other manner working on such goods, *or in any process or occupation necessary to the production thereof * * *."*

The amended last clause provides "*or in any closely related process or occupation directly essential* to the production thereof * * *." (Emphasis supplied).

For discussion of 1949 amendment, see also, Wecht, "Wage Hour Law Coverage" (1951) pp. 322–355.

part in the unloading of the bottles at the plant, the storage thereof, the washing, the blending of the ingredients, the twirling, or any part of the process which is associated with the production of the beverage. As we have seen, these employees are primarily engaged in activities which are purely intrastate in character. Of course it must be recognized that they handle filled bottles, by unloading and placing them in the vending machines or delivering them to retail outlets. This, however, is the "end of the line" of the production process, so to speak, and because of the local character of these activities, these duties form no basis for the Secretary's position. Indeed, he so recognizes and rests his case solely on the proposition that, inasmuch as the employees retrieve and load empty bottles, 10% of which, or one of each ten handled, may ultimately leave the State of Missouri, the employees are in the same category as those within the plant who concededly are engaged in the production of goods for commerce. While it may be said that the retrieval of empty bottles is useful and of benefit to appellees in the merchandising of their product, and that by tenuous calculation, these bottles may ultimately be traced to an interstate journey at some future time, it seems to our mind somewhat of an absurdity to trace the journeys of "second hand" bottles through their intrastate associations, searching for remote connections which eventually may contribute to their reappearance, freshly filled, in interstate commerce. Under such a view, it can as well be said that the consumer who carries his empty bottles to the corner store in order to recoup his 2 cent deposit is also contributing to the final reappearance of the bottle in interstate commerce. There must be a cut-off point at some time, and we are not persuaded to believe that the remote and incidental activity involved here, on the very periphery or fringe of the appellees' intrastate operation, may logically and realistically be regarded as "closely related" or "directly essential to" the production of goods for commerce.

Paraphrasing the language of the Supreme Court in Zachry, supra, 362 U.S. at page 321, 80 S.Ct. at page 746:

"Bearing in mind the cautionary revision in 1949, and that the focal center of coverage is 'commerce,' the combination of the remoteness of [this activity] from production, and the absence of [an exclusive or primary relationship of the activities of the employees here] to production, persuades us that the activity is not 'closely related' or 'directly essential' to the production for commerce."

■ Recognizing that we are not bound by the opinion of the court of appeals of another Circuit, we have accorded the instant appeals independent consideration, having in mind, however, that in the interest of uniformity, a court of appeals is not justified in refusing to follow the decision of another court of appeals unless satisfied that the prior decision is clearly erroneous. Cosentino v. Local 28, Internat'l Organ. of Masters, etc., 8 Cir., 268 F.2d 648, 652. Clougherty v. James Vernor Co., supra, 187 F.2d 288, which presented an identical factual situation, was decided upon the basis of the language of § 203(j) prior to amendment, and there the Sixth Circuit concluded that the drivers were not engaged in an occupation "necessary" to the production of goods. A fortiori, with the 1949 limiting amendment, the drivers and drivers' helpers here are not performing an activity "closely related" or "directly essential" to production of goods for commerce.

The judgments are

Affirmed.

WOODROUGH, Circuit Judge (dissenting).

I think the article the employer herein produces for commerce is a bottled beverage; an integrated commodity; a combination of elements which includes the bottle as an essential constituent element —the most costly single element of the combination. A sale of a unit of the employer's product includes the bottle as

well as every other constituent element. Whether through the use of vending machines a bailment of the bottle rather than a sale is effected seems immaterial. Recovering the used bottles in un-usable dirty condition, assembling them, processing them for re-use, re-using them are also an essential integrated part of manufacturing the product. It is a part of the manufacture to which the employer devotes capital in trucks, machinery, and facilities and in which skilled and unskilled workmen are employed throughout the nation (and the world) in the planning and execution of the vast Pepsi-Cola production.

It does not seem to me that the men employed in this part of the production of the bottled beverage ought to be excluded from coverage of the Act.