W. Willard **WIRTZ**, Secretary of Labor, United States Department of Labor, Appellant,

v.

**PEPSI COLA BOTTLING COMPANY OF AUGUSTA, Inc., Appellee.**

No. 20627.

United States Court of Appeals
Fifth Circuit.

March 15, 1965.

---

William Fauver, Atty., Bessie Margolin, Associate Sol., Jacob I. Karro, Deputy Associate Sol., Charles Donahue, Sol., Caruthers G. Berger, Atty., Dept. of Labor, Washington, D. C., Beverley R. Worrell, Regional Atty., for appellant.

E. D. Fulcher, Augusta, Ga., for appellee, Fulcher, Fulcher, Hagler & Harper, Augusta, Ga., of counsel.

Before TUTTLE, Chief Judge, MOORE* and BELL, Circuit Judges.

TUTTLE, Chief Judge:

The question presented by this appeal is whether "route helpers" engaged wholly within the state of Georgia, were engaged in the "production of goods for commerce," within the meaning of Section 3(j) of the Fair Labor Standards Act, 29 U.S.C.A., Supp. IV, § 201 et seq., because of their activity in picking up empty bottles for return to the Pepsi Cola Bottling Company of Augusta.

There is no dispute as to the facts. The employees concerned in the case accompany the driver-salesmen on their routes. They are engaged in the delivery of cases of bottled Pepsi Cola to defendant's customers within Georgia (concededly not a protected activity if this was all the employees did), and in collecting the used empty bottles for reuse in the subsequent bottling and delivery of Pepsi Cola to customers in both Georgia and South Carolina. About 46 per cent of the bottles thus picked up by the affected employees are, after being cleaned and refilled, distributed to points in South Carolina within a few days. The route helpers enter the customers' establishments, remove bottles of other brands from the wooden cases, or "flats", fill the flats with empty Pepsi Cola bottles, and load the flats on the truck. They then carry into the establishments flats filled with full bottles in the quantities specified by the driver-salesmen, and place them in the customers' establishments. After serving the last customer on the route, the truck returns with the empty bottles to the defendant's plant, where the empties are unloaded by other employees and "placed in the plant for use without any segregation as between Georgia and South Carolina routes."

It was stipulated by the parties that "Pepsi Cola, as it is marketed to customers, is a carbonated soft drink and an air tight container is necessary to retain the carbonation. The container and the cap must be strong enough to withstand some internal pressure. Without the carbonation, the drink would lose its particular Pepsi Cola taste."

It was also stipulated that "the experience of the defendant corporation in the soft drink industry generally is that returnable glass bottles enable the industry to keep costs to consumers down. It is

---

* Of the Second Circuit, sitting by designation.

essential for bottles to be returned to the plant in order to keep the cost of soft drinks at popular prices."

It is clear from the record here that 93 per cent of the bottled Pepsi Cola delivered to Georgia and South Carolina customers were delivered in used bottles, and, as indicated above, some 46 per cent of these were delivered in interstate commerce.

We think it clear that these employees are engaged in the "production of goods for commerce," when we view the definition of "goods" in Subsection (i) of Section 3 of the Act, and the definition of "produced".[1]

While we recognize that on substantially the same issues the Court of Appeals for the Sixth Circuit in Clougherty v. James Vernor Company, 187 F.2d 288, and the Court of Appeals for the Eighth Circuit in Mitchell v. Hygrade Water & Soda Company, 285 F.2d 362, have arrived at a contrary result, we conclude that we must, with deference, differ from these decisions.

It is apparently conceded that the persons in the plant who wash the empty bottles, and thus prepare them for refilling, are covered employees. It is impossible to see why every other person whose activities include handling these bottles in a manner that is essential to their reuse within the immediate future are not in precisely the same relationship to the commerce involved as would be those who are engaged in servicing the bottles at the plant.

In light of the admitted facts, we conclude that the dissenting opinion by Judge Woodrough in Mitchell v. Hygrade Water & Soda Co., supra, clearly states the correct legal principle involved:

"I think the article the employer herein produces for commerce is a bottled beverage; an integrated commodity; a combination of elements which includes the bottle as an essential constituent element— the most costly single element of the combination. A sale of a unit of the employer's product includes the bottle as well as every other constituent element. Whether through the use of vending machines a bailment of the bottle rather than a sale is effected seems immaterial. Recovering the used bottles in unusable dirty condition, assembling them, processing them for re-use, re-using them are also an essential integrated part of manufacturing the product.

"It is a part of the manufacture to which the employer devotes capital in trucks, machinery, and facilities and in which skilled and unskilled workmen are employed throughout the nation (and the world) in the planning and execution of the vast Pepsi-Cola production.

"It does not seem to me that the men [drivers' helpers] employed in this part of the production of the bottled beverage ought to be excluded from coverage of the Act." [285 F.2d at 367–368].

In its supplemental brief filed in this Court, appellee cites a recent Georgia Court of Appeals decision, Tolbert v. Buck et al., 139 S.E.2d 457, in which it was decided that a "route helper" is not covered by the Fair Labor Standards

---

1. "§ 3. As used in this Act—

\* \* \* \* \*

"(i) 'Goods' means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof.

"(j) 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this Act an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any State."

Act. It is made clear from the decision of the court in this Georgia State Court decision that its opinion was based on the Federal court decisions which we have cited above. The Georgia court said:

"We feel constrained to follow these cases since they involve the construction and application of a Federal statute by Federal courts." 139 S.E.2d 459.

While it is unfortunate for statutes affecting all parts of the nation to be decided differently in different circuits, it nevertheless devolves upon each court that is called upon to construe federal statutes to apply what to it appears to be the proper legal reasoning and arrive at a correct legal determination. It appears too clear to us for argument that these used bottles are goods that are the subject of commerce and that they are permitted to become such subject of commerce only because of the activity of these employees. We think it equally clear that these affected employees are engaged in "handling" and "transporting" and that they are thus actually engaged in the production of goods for commerce without reference to the alternative test of being "in any closely related process or occupation directly essential to the production thereof." Moreover, we think it clear without doubt that were they not so engaged in actual production, they would clearly be covered by the alternative coverage as being engaged in a 'closely' related process  *  *  *  directly essential to the production" of the bottled Pepsi Cola for commerce.

It is perfectly clear from this record that the use of the very bottles handled by these employees is essential to the continued flow of commerce in bottled Pepsi Cola across state lines. It makes no difference whether the appellee sells the bottles in commerce or merely supplies them as a container (of course, a necessary one) for the bottled drink. It is an essential part of the commerce and, therefore, the handling of the bottles during their practically uninterrupted flow from the filling machine to a Georgia consumer, to the empty flat, to the truck, back to the plant, then to South Carolina and back to the plant, is about as "closely related" a process, and as "directly essential to the production" of the Pepsi Cola as could be imagined. See Opelika Royal Crown Co. v. Goldberg, 5 Cir., 299 F.2d 37, and Nunn's Battery & Electric Co. v. Goldberg, 5 Cir., 298 F.2d 516.

We conclude, therefore, that the judgment of the trial court was in error, and it must be reversed and the case remanded for further proceedings not inconsistent with this opinion.