**Gabina Camacho LOPEZ**

v.

**Manuel RODRIGUEZ and Mirtha Rodriguez, Appellants.**

**No. 80-2320.**

United States Court of Appeals, District of Columbia Circuit.

Submitted Without Oral Argument.

Decided Nov. 20, 1981.

---

Ronald Tuck and Carolyn Williams, Washington, D.C., were on brief for appellants.

Kenneth Bernard Weckstein, Washington, D.C., was on brief for appellee.

Before TAMM, WILKEY and EDWARDS, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

EDWARDS, Circuit Judge:

Appellee Gabina Camacho Lopez, a citizen of Bolivia and resident alien of the United States, brought this action under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201–219 (1976 & Supp. III 1979) ("FLSA" or "Act"), in the District Court for the District of Columbia to recover unpaid minimum wages. She alleged that she worked for several years without monetary compensation as a live-in housekeeper for appellants Manuel and Mirtha Rodriguez, also citizens of Bolivia and resident aliens of this country. The District Court held that appellants had violated the FLSA by not paying Lopez the applicable minimum wage during her employment and awarded her $56,080.00 in unpaid minimum wages and liquidated damages, plus costs and reasonable attorney's fees. *Lopez v. Rodriquez*, 500 F.Supp. 79 (D.D.C.1980).[1]

We affirm the judgment of the District Court in all respects except one. We reject that portion of the District Court decision holding that, under 29 C.F.R. § 531.30 (1980), appellants are not entitled to a credit against unpaid wages for "board, lodging or other facilities" furnished by appellants to appellee. On this issue, we reverse and remand to allow the District Court to make further factual findings, determine the appropriate credit, and recalculate the money award due appellee.

## I. BACKGROUND

The District Court's factual findings can be summarized briefly. Appellee had five years of formal education in Bolivia. She is literate in Spanish but speaks little English. She worked as a professional housekeeper in Bolivia, beginning at the age of twelve, until she left that country at the age of nineteen to work for appellants in the United States. Appellee first learned of the job opening in the United States while she was employed in Bolivia as a housekeeper for the parents of appellant Manuel Rodriguez.

In September 1976, appellant Mirtha Rodriguez met with appellee in Bolivia and,

---

1. Although the District Court opinion spells appellants' name "Rodriquez," both parties to this appeal use the spelling "Rodriguez."

after conferring with appellee's relatives, arranged for her to come to the United States to work as appellants' housekeeper and to help care for their children. Appellee understood that she was to live with appellants and that they would pay her and provide her with necessities. Mrs. Rodriguez made all of the necessary documentary and travel arrangements for appellee and returned to the United States with her in October 1976.

Appellee resided with the appellants from October 9, 1976 until June 9, 1979. During that time she cooked for them, cleaned their house, and took care of their children. She worked seven days per week, ten to twelve hours per day, without vacation and with minimal time off. She received room, board, miscellaneous clothing and toiletries, medical expenses, and minimal pocket money. Although appellants told appellee that they were putting money in the bank for her, appellee never received payment for her work, even after she demanded it.

**2.** Appellants contend that the District Court's award of liquidated damages was improper under 29 U.S.C. § 260 (1976) because, appellants claim, they demonstrated that they had acted in good faith and with reasonable grounds for believing their actions did not violate the FLSA. After reviewing the record, we conclude that the District Court's finding that appellants "failed to demonstrate a good faith effort to comply with the Fair Labor Standards Act," .500 F.Supp. at 81, is not clearly erroneous. See Laffey v. Northwest Airlines, Inc., 567 F.2d 429, 464–65 (D.C. Cir. 1976), cert. denied, 434 U.S. 1086, 98 S.Ct. 1281, 55·L.Ed.2d 792 (1978) (trial court's finding as to whether employer has met "substantial burden" of proving good faith not to be disturbed on appeal unless clearly erroneous). Moreover, even if appellants had made the requisite showing under 29 U.S.C. § 260, the District Court nonetheless had discretion to award liquidated damages; a successful showing under 29 U.S.C. § 260 merely makes liquidated damages nonmandatory. 567 F.2d at 465.

**3.** Appellants do not here challenge the District Court's denial of a setoff for these miscellaneous expenses.

**4.** As noted above, we reject only that portion of the District Court decision holding that appellants are not entitled to a credit for board and lodging. We affirm the District Court's decision in all other respects.

■ The District Court concluded that appellants "failed to demonstrate a good faith effort to comply with the Fair Labor Standards Act" and "exploited for their own purposes a young, poorly educated, naive alien who was completely at their whim and mercy." 500 F.Supp. at 81. The District Court accordingly awarded appellee $28,040.00 in unpaid minimum wages and an additional equal amount as liquidated damages,[2] plus costs and reasonable attorney's fees. The District Court, however, denied appellee overtime pay and prejudgment interest on the award. The court also held that appellants were entitled neither to a credit against unpaid minimum wages for board, lodging or other facilities furnished by appellants to appellee, nor to a setoff for the cost of clothing and other miscellaneous expenses they incurred on appellee's behalf.[3] On appeal, appellants challenge several aspects of the District Court's decision, including the court's refusal to allow a credit for board and lodging furnished to appellee.[4]

Appellants argue that the contract doctrine of in pari delicto bars appellee's recovery, reasoning that their employment contract with appellee was illegal because appellee entered the United States on a tourist visa and therefore could not legally work here (although there is no evidence in the record on appellee's visa status upon entering this country). We find this argument unsupported and unconvincing. We also find no merit in appellants' contention that enforcing the FLSA in a case like this would undermine enforcement of federal immigration laws.

Appellants additionally contend that the District Court's finding that appellee worked seven days per week, ten to twelve hours per day is excessive. They point to no evidence in the record, however, to show that the court's finding was clearly erroneous, and we conclude that it was not.

Appellants further argue that the District Court erred in applying the three-year statute of limitations to appellee's claims. A cause of action under the FLSA is subject to a two-year statute of limitations unless it arises out of a "willful violation" of the statute. 29 U.S.C. § 255(a) (1976). The District Court found that appellants willfully violated the FLSA, 500 F.Supp. at 82, and, by awarding appellee unpaid minimum wages for a period of almost three years, implicitly applied the three-year statute of limitations. Appellants contend that appellee's award of unpaid minimum wages should have been limited by the two-year stat-

## II. CREDIT FOR BOARD AND LODGING

Section 3(m) of the FLSA, 29 U.S.C. § 203(m) (1976 & Supp. III 1979), defines " '[w]age' paid to any employee" to include "the reasonable cost, as determined by the Administrator, to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees . . . ." The Wage and Hour Division of the Department of Labor has promulgated regulations interpreting this provision. One such regulation, 29 C.F.R. § 531.30 (1980),[5] states that, in order for the reasonable cost of such facilities to be considered part of the wage paid an employee, "[n]ot only must the employee receive the benefits of the facility for which he is charged, but it is essential that his acceptance of the facility be voluntary and uncoerced. See *Williams v. Atlantic Coast Line Railroad Co.* (E.D.N.C.). 1 W.H. Cases 289."[6] In denying appellants a credit for board and lodging, the District Court cited this regulation, although it did not specifically find that appellee's acceptance of board and lodging was not "voluntary and uncoerced." 500 F.Supp. at 82.

The text of 29 C.F.R. § 531.30 does not define the words "voluntary and uncoerced," and few courts have had occasion to construe this language.[7] The District Court in this case cited *Marshall v. Intraworld Commodities Corp.*, 89 Lab.Cas. (CCH) ¶ 33,922 (E.D.N.Y.1980), as authority for its denial of appellants' claim for a credit for board and lodging. In *Intraworld*, a citizen of India worked in his employer's office and home without receiving any wages. The court found the employer had misled and taken advantage of an uneducated alien. It denied the employer a credit for board and lodging, finding that the employee's acceptance of the facilities was not "voluntary and uncoerced" under 29 C.F.R. § 531.30 because "[t]he claimant had no other place to live and no choice but to accept the food and facilities provided to him." *Id.* at 49,273.

ute of limitations. On the record in this case, we conclude that the District Court's finding of willfulness was not clearly erroneous and was consistent with the willfulness standard articulated by this court in *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 459–62 (D.C. Cir. 1976), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). We therefore hold that the District Court correctly applied the three-year statute of limitations. We also note that appellants likely waived their statute of limitations defense by failing to raise it in the court below. *See* Fed.R.Civ.P. 8(c); *Mumbower v. Callicott*, 526 F.2d 1183, 1187 n.5 (8th Cir. 1975); *Hodgson v. Humphries*, 454 F.2d 1279, 1284 (10th Cir. 1972) (statute of limitations under 29 U.S.C. § 255 must be pleaded as an affirmative defense in accordance with Fed. R.Civ.P. 8(c)).

**5.** *See also* 29 C.F.R. § 552.100(b) (1980).

**6.** The case cited in the text of the regulation, *Williams v. Atlantic Coast Line R.R.*, 1 Wage and Hours Cas. (BNA) 289 (E.D.N.C.1940), does little to define the scope of the requirement that acceptance be "voluntary and uncoerced." In that case the court held that the employer did not "furnish" employees with any facilities within the meaning of § 3(m) of the FLSA, 29 U.S.C. § 203(m); consequently, it would not include the cost of the facilities claimed by the employer as part of the wages paid to employees. *Id.* at 296. The facts of the case reveal that at least one of the claimants

did accept lodging (in a railroad box car) assigned to him by the employer "in order to hold his job." *Id.* at 292. Presumably as to this employee, lodging was not "furnished" within the meaning of § 3(m) of the Act because it was not accepted voluntarily. Indeed, the court made a general factual finding that the employer

did not in fact furnish the plaintiffs with livable housing facilities but on the contrary intentionally employed the device of forcing them to accept houses so that [it] could claim that the cost of such houses, highly inflated, could be added to the cash wage paid, and thus escape having to increase plaintiffs' wages to the amount required by the Fair Labor Standards Act.

*Id.* at 293.

**7.** Several courts have upheld the specific regulation embodied in 29 C.F.R. § 531.30 as authorized under the FLSA. *Davis Bros., Inc. v. Marshall*, 522 F.Supp. 628 (N.D.Ga.1981); *Morrison, Inc. v. Marshall*, No. 80–0228–P (S.D. Ala. June 15, 1981); *Walling v. Peavy-Wilson Lumber Co.*, 49 F.Supp. 846, 895 (W.D.La. 1943). Other courts have simply applied the general principles underlying the regulation without interpreting the words "voluntary and uncoerced." *E.g., Hodgson v. Frisch Dixie, Inc.*, 66 Lab.Cas. (CCH) ¶ 32,557, at 44,962 (W.D.Ky.1971), *aff'd per curiam*, 469 F.2d 82 (6th Cir. 1972).

At least one court has imposed an even stricter test of voluntariness under 29 C.F.R. § 531.30. In *Marshall v. New Floridian Hotel, Inc.*, 87 Lab.Cas. (CCH) ¶ 33,870 (S.D.Fla.1979), the court held that where an employer failed to offer employees the option of receiving in cash the amounts claimed as a credit for meals, lodging and other facilities, the employees' acceptance of the provisions could not be considered voluntary and uncoerced.

The tests enunciated in *Intraworld* and *New Floridian Hotel* may have been appropriate under the factual circumstances considered by the courts in those cases. We think a somewhat different approach is necessary, however, in a case such as this one, involving a live-in domestic service employee. Where, as here, "living-in" is an integral part of the job, the elements of voluntarism and coercion take on different meanings than those suggested in *Intraworld* and *New Floridian Hotel*. Implicit in the courts' decisions in each of those cases was a finding that "living-in" was not a necessary condition of employment. However, in the present case, appellants were concededly seeking to employ a "live-in" housekeeper and babysitter when they hired appellee. If appellee understood this when she accepted the job, and if her acceptance of the job was voluntary and uncoerced, then it is idle to inquire whether her *initial* acceptance of board and lodging was voluntary and uncoerced. Appellee had no choice but to accept the lawful "live-in" condition if she desired the job.[8]

The findings of the District Court indicate that appellee did voluntarily and knowingly enter her employment relationship with appellants. The court found that appellants conferred with appellee and her relatives before arranging for her to come to the United States to work for them, and stated that working in the United States would be an "exciting experience" for appellee, enabling her to travel abroad and to earn more than she could in Bolivia. 500 F.Supp. at 81. The court further found that appellee understood that "she would live with and be provided her necessities by the [appellants]." *Id.* In light of these findings, it was erroneous for the court to deny appellants any credit for board and lodging furnished to appellee on the ground that appellee's acceptance of these facilities during the entire period of employment was not "voluntary and uncoerced." Appellee's voluntary acceptance of employment with appellants indicated her acceptance of the lawful conditions of employment. Since "living-in" was a lawful condition of employment and an integral part of the job, it must be found that appellee's initial acceptance of board and lodging was "voluntary and uncoerced" under 29 C.F.R. § 531.30. *See* note 8 *supra*.

We recognize, however, that even where an employee voluntarily and knowingly accepts a job which, by its nature, requires board and lodging in the employer's home, an employer may impose "coercive" conditions—that is, conditions so onerous and restrictive that the employee's continued employment and acceptance of board and lodging ceases to be voluntary. The District Court's findings suggest that, at some unspecified time, appellee became dissatisfied with her working conditions; however, the District Court's opinion does not state when, if ever, those conditions became so coercive that appellee's employment with appellants could no longer be regarded as voluntary. We therefore remand for the District Court to make specific factual findings on this issue.

In reconsidering this case, the District Court may deny a credit to appellants for board and lodging for *part* of the employment period only if it finds that appellee

---

8. In saying this we stress that this case is distinguishable from cases such as *Williams v. Atlantic Coast Line R.R.*, 1 Wage and Hours Cas. (BNA) 289 (E.D.N.C.1940), *see* note 6 *supra*, where, although room and board is not an integral part of the job, the employee is coerced into accepting such facilities "in order to hold his job." *Id.* at 292. The employees in *Williams, Intraworld* and *New Floridian Hotel*, and other like cases, could have performed their jobs without "living-in." The same cannot be said of appellee in this case; rather, appellee was told in effect that she had to "live-in" in order to be able to perform the housekeeping/babysitting job according to appellants' specifications.

would have left the job but for the coercive conditions imposed upon her by appellants. Any finding that appellee was unable to leave the job, however, must be attributable to restrictive actions taken by her employers. To hold otherwise would be to ignore the fact that "living-in" was an integral part of appellee's job.

In calculating appellants' credit for board and lodging, the court should bear in mind that the "reasonable cost" of furnishing those facilities, 29 U.S.C. § 203(m), has been interpreted to mean "not more than the actual cost to the employer" of the facilities and does not include a profit to the employer. 29 C.F.R. § 531.3(a)–(b) (1980).[9]

## III. CONCLUSION

Given appellee's voluntary acceptance of a position as a "live-in" domestic service employee, in which board and lodging were understood to be part of her compensation, it was erroneous for the District Court to deny appellants a credit for board and lodging furnished to appellee for the entire employment period on the ground that appellee's acceptance was not "voluntary and uncoerced." As discussed above, the court may deny appellants a credit for board and lodging for part of the employment period only if it finds that appellee sought to leave her job but realistically could not do so because of coercive conditions imposed by appellants.

Considering the appropriate recordkeeping requirements and other applicable regulations, the District Court should recalculate its award of unpaid minimum wages with a properly determined credit for board and lodging. The District Court should, as it did in its original judgment, add to the award of unpaid minimum wages an equal additional amount as liquidated damages, plus reasonable attorney's fees and costs. Postjudgment interest should also be awarded from the date of the District Court's original judgment.[10] In all other respects the District Court's judgment is affirmed.

*So ordered.*

**9.** The court should also consider the applicability of any recordkeeping regulations that may require, *inter alia*, employers to substantiate the cost of furnishing any board, lodging or other facilities claimed as a credit against unpaid wages. *E.g.*, 29 C.F.R. §§ 516.27, 516.34, 552.100(c)–(d) (1980).

**10.** The District Court denied appellee prejudgment interest on her award because "her recovery of liquidated damages equal to the amount of her unpaid minimum wages constitutes compensation for damages arising from the Defendants' delay in the payment of the basic minimum wage." 500 F.Supp. at 82. We agree with the District Court that prejudgment interest should not be awarded in the circumstances of this case, where (1) the award of liquidated damages is mandatory and the court awards the maximum amount allowed under the statute, and (2) the court finds that the liquidated damages awarded compensate the employee for the lost use of her money from unpaid wages. *See, e.g., Spagnuolo v. Whirlpool Corp.*, 641 F.2d 1109, 1114 (4th Cir.), *cert. denied*, —— U.S. ——, 102 S.Ct. 316, 70 L.Ed.2d 158 (1981); *Hodgson v. Miller Brewing Co.*, 457 F.2d 221, 229 (7th Cir. 1972). We express no opinion as to whether a court may award prejudgment interest in other circumstances.

Postjudgment interest, by contrast, is allowed "on any money judgment in a civil case recovered in a district court . . . calculated . . . at the rate allowed by State law." 28 U.S.C. § 1961 (1976). Relying on this statutory provision, courts have awarded postjudgment interest in FLSA actions despite their denial of prejudgment interest. *E.g., Clougherty v. James Vernor Co.*, 187 F.2d 288, 293–94 (6th Cir.), *cert. denied*, 342 U.S. 814, 72 S.Ct. 28, 96 L.Ed. 616 (1951); *Keen v. Mid-Continent Petroleum Corp.*, 63 F.Supp. 120, 141 (N.D. Iowa 1945), *aff'd*, 157 F.2d 310 (8th Cir. 1946).