**Raymond J. DONOVAN, Secretary of Labor, U. S. Department of Labor,**

v.

**MILLER PROPERTIES, INC., et al.**

Civ. A. No. 80–434–B.

United States District Court, M. D. Louisiana.

Sept. 24, 1982.

Richard S. Thomas, Asst. U. S. Atty., Baton Rouge, La., Barbara G. Heptig, Dallas, Tex., for plaintiff.

G. William Jarman, Sanders, Downing, Kean & Cazedessus, Baton Rouge, La., Thomas W. Power, Robert D. McDonald, Power & McDonald, Washington, D. C., for defendants.

POLOZOLA, District Judge:

The question presented to the Court is: "Is a restaurant 'furnishing' food to all its employees within the meaning of § 3(m) of the Fair Labor Standards Act of 1983, as amended, (the Act), 29 U.S.C. § 203(m), when some employees choose not, or would prefer not, to eat the restaurant food; but it is available for them?" For reasons which follow, the Court answers the question in the affirmative.

The Secretary of Labor (Secretary) brought this action to enjoin the defendant, Miller Properties, Inc. (Miller), from violating the minimum wage provisions of the Act and to recover back wages for some 97 employees. The parties have filed cross-motions for summary judgment and have filed with the Court a Stipulation of Facts. Following is a summary of the stipulated facts agreed to by the parties.

The defendant is a covered employer under the Act. All of its hourly employees receive most of their wages in cash and the rest in a meal credit. The meal credit is based on the cost of what an average employee eats. The Secretary does not challenge Miller's determination of reasonable cost. Each employee receives the same meal credit regardless of how much he or she actually eats. Neither prospective nor current employees are offered the choice of receiving their wages entirely in cash.

In return for a meal credit, each employee gets beverages and snacks during the work shift and, depending on the length of his shift, one or two complete meals. The meal credit policy is explained to prospective employees and is clearly referenced on the employees' weekly paychecks.

Employees select meals from the menu and some food is prepared only when ordered. If there is time during the work shift, employees are allowed to eat during the shift. They are sometimes required to prepare their own food. If time does not permit, employees may eat their meals before or after the work shift. These meals are prepared by working employees. Employees are not compensated for this time as Miller does not consider it "hours worked" under the Act.

Some employees would prefer to get their wages entirely in cash. Some employees consume food with a cost greater than the meal credit, while others do not consume all the food to which they are entitled. Other employees bring food from home or would prefer to eat different foods than those offered by Miller. Employees cannot give their food to others, take it home, or accumulate their meal credits.

Miller agrees that the meal credit plan results in some employees being paid cash wages at less than the minimum wage.

Section 3(m) of the Act provides, in pertinent part:

(m) "Wage" paid to an employee includes the reasonable cost, as determined by the Administrator, to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees. Provided, That the cost of board, lodging, or other facilities shall not be included as a part of the wage paid to any employee to the extent it is excluded therefrom under the terms of a bona fide collective-bargaining agreement applicable to the particular employee: Provided further, That the Secretary is authorized to determine the fair value of such board, lodging, or other facilities for defined classes of employees and in defined areas, based on average cost to the employer or to groups of employers similarly situated, or average value to groups of employees, or other appropriate measures of fair value. Such evaluations, where applicable and pertinent, shall be used in lieu of

actual measure of cost in determining the wage paid to any employee.

This provision was made part of the Act by the Joint Conference Committee convened to reconcile inconsistent Fair Labor Standards bills passed by the two Houses of Congress. None of original bills contained Section 3(m), and there is little legislative history available to determine its purpose. The Conference Report does not state why Section 3(m) was included. Section 3(m) appears to have originally been drafted as an amendment to the House bill by Congressman Crawford on the floor of the House. 83 Cong.Rec. 7408 (1938). Its purpose seems to be two-fold. First, Section 3(m) is designed to allow employers credit, against the minimum wage, for board and lodging customarily provided as a part of the employment contract. Second, Section 3(m) was enacted to prevent employers from avoiding the minimum wage by forcing employees to pay excessively for board and lodging provided by the employer. Thus, Section 3(m) allows the employer to receive credit only for the *cost* of providing these facilities.

The Secretary urges the Court to apply his long-standing interpretation of "furnished" found in 29 C.F.R. § 531.30:

§ 531.30 "Furnished" to the employee.

The reasonable cost of board, lodging, or other facilities may be considered as part of the wage paid an employee only where customarily "furnished" to the employee. Not only must the employee receive the benefits of the facility for which he is charged, but it is essential that his acceptance of the facility be voluntary and uncoerced. *See Williams v. Atlantic Coast Line Railroad Co.* (E.D.N. C.).

1 W.H. Cases 289.

The defendant contends that the Secretary's interpretation is invalid and that, even if valid, does not proscribe Miller's actions under the stipulation of facts agreed to by the parties.

While the Secretary's interpretation of the Act is to be accorded considerable

weight, it is not binding on the courts. *Marshall v. Dallas Ind. School Dist.*, 605 F.2d 191 (5 Cir. 1979). An interpretation made by the Secretary cannot be used to achieve a result which is contrary to the statutory scheme.

The historical basis and meaning of § 531.30 is unclear. As noted in *Lopez v. Rodriguez*, 668 F.2d 1376 (D.C.Cir.1981), "few courts have had occasion to construe this language." The interpretation cites *Williams v. Atlantic Coast Line Railroad Co.*, 1 W.H. Cases 289 (E.D.N.C.1940), as authority for the "voluntary and un-coerced" standard. In that case, the court found that there was a failure to provide any suitable and acceptable facilities under § 3(m)—because one person used the "facility" to keep from losing his job. Also, there was no evidence that the defendant in that case had incurred any cost to provide these "facilities". Thus, the authority for the interpretation does not serve to clarify its meaning.

Two district court decisions, both from the same district, have reached opposite conclusions on the meaning of § 531.30. *Davis Brothers, Inc. v. Marshall*, 522 F.Supp. 628 (N.D.Ga.1981); *Melton v. Round Table Restaurants, Inc.*, 20 W.H. Cases 532 (N.D.Ga.1971). *Davis* appears to support the Secretary's interpretation, while *Melton* reaches an opposite result. The Court believes the decision rendered in *Melton v. Round Table Restaurants, Inc.*, supra, is correct and chooses to follow it in reaching a decision in this case. In *Melton* the court held that an employer does not fail to furnish food merely because some employees do not eat all meals. The court further indicated that "furnished" ordinarily means "made available" or "provided". In *Melton*, the court allowed a credit, against each employee's wages, of the reasonable cost of restaurant employee meals, even though some employees rarely ate. This Court believes the *Melton* court's interpretation of § 3(m) is the appropriate and correct interpretation and not that of the Secretary or *Davis Bros.*

The Secretary also cites *Marshall v. New Floridian Hotel, Inc.*, 87 Labor Cases ¶ 33,-870 (S.D.Fla.1979), for the proposition that § 3(m) of the Act mandates "voluntary acceptance" by the employees of the facilities provided. He argues that this requires employers to offer employees the opportunity to receive all of their wages in cash. The court in *Marshall* did use this argument as one of the potential bases for its opinion. On appeal, the Eleventh Circuit affirmed the court's decision but refused to use this basis for their opinion. The Eleventh Circuit stated "significant questions" had been raised, by amicus curiae, regarding its validity. *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 473 (11 Cir. 1982).

It is clear that Congress intended restaurant employee's wages to be covered by § 3(m) when this class of employees was added to the Act's coverage in 1966. In fact, Senate Report Number 1487 states,

It should be noted that at present "wages" include the reasonable cost of board, lodging, and other facilities customarily provided by the employer to his employees. Employee meals are never considered primarily for the benefit or convenience of the employer and thus meals provided to restaurant employees by their employers will be considered part of wages under the provisions of the present law.

*U.S.Code, Cong. and Admin.News—1966* pp. 3002, 3015.

It is clear that Congress intended, through § 3(m), to allow employers to receive credit for part of an employee's wages by providing meals to the employees. Safeguards against employers profiting by providing meals were set forth in the Act.

Thus, Section 3(m) gives the Secretary adequate sanctions to remedy any employer abuse. Only the reasonable cost of facilities and board furnished can be deducted. In addition, credit can only be claimed if these facilities and board are customarily furnished in the industry. The Secretary is given broad power in determining what is a reasonable cost. Thus, the Court finds that the Secretary's interpretation of § 3(m) is

wrong and Miller should be allowed a credit for the reasonable costs of meals provided to its employees.

Miller's employee meals are generally not prepared until ordered by an employee. If no employee eats, Miller incurs little or no costs to credit against wages of its employees. Since the Secretary has stipulated that only a reasonable cost is being deducted by Miller, it is safe to conclude that some food must have been eaten by some of the employees. It is also reasonable to conclude that Miller incurred some costs. Under the Act, these costs are wages and are, therefore, creditable against the minimum wage requirements which Miller is obligated to pay to its employees.

The Secretary raises numerous concerns regarding the wisdom of § 3(m) as interpreted by the Court today. While the Court finds many of these arguments persuasive, such arguments should be directed to Congress and not to the court. Furthermore, it is the Congress and not the Secretary which is allowed to amend Section 3(m) by placing additional conditions on employers. It is beyond the Secretary's power to change the conditions established by the Congress when it enacted § 3(m).

Thus, the Secretary's interpretation of § 3(m) of the Act which is found in 29 C.F.R. § 531.30, is invalid. However, regardless of the validity of the interpretation on its face, the Secretary's interpretation cannot be applied in the manner which the Secretary seeks in this case.

The Court finds that a voluntary acceptance of the pay arrangement by the employee satisfies the conditions set forth in § 3(m) and § 531.30. *Marshall v. Truman-Arnold Distributing Co., Inc.*, 640 F.2d 906 (8 Cir. 1981); *Lopez v. Rodriquez*, supra. In *Truman-Arnold*, the district court allowed the value of living quarters, in which the defendant's service station managers lived, to be included as wages paid. The Eighth Circuit affirmed, saying, "the lessee was free to accept or reject the employment contract." Section 531.30 was not specifically cited, but one of the related regulations, § 531.3(d)(1), was.

*Lopez* involved a young Bolivian girl who took a job as a housekeeper for the defendants. The D.C. Circuit reversed the district court's finding that the cost of board and lodging could not be included as part of this employee's minimum wage. The district court did not specifically state how it found the employee's acceptance involuntary, but it cited § 531.30 and *Marshall v. Intraworld Commodities Corp.*, 24 W.H. Cases 860 (E.D. N.Y.1980).

The *Intraworld* court found the employer "took advantage of an ignorant alien." The court also found that the employee's acceptance was not voluntary and was coerced since "the claimant had no other place to live and no choice but to accept the food and facilities provided him." Presumably, the district court in *Lopez* found similar facts.

The D.C. Circuit found, however, that while *Intraworld* may have been correct "under the factual circumstances considered", it should be distinguished from *Lopez* on the basis that, in *Intraworld*, "living-in" was not a necessary condition of employment" as it was in *Lopez*. The court also cited *Marshall v. New Floridian Hotel, Inc.*, supra, and distinguished it in the same way they distinguished *Intraworld*.

The *Lopez* court then set up a test for determining whether acceptance is "voluntary and uncoerced" under § 531.30. The court found that voluntary acceptance of employment included acceptance of the lawful conditions of employment. Since the acceptance of "live-in" employment was voluntary, board and lodging were a valid credit toward the minimum wage.

The Court agrees with the D.C. Circuit in the test it formulated for determining voluntariness. But the Court believes that court erred in its method of distinguishing *Intraworld* and *New Floridian*. Section 3(m) does not require that the conditions be "necessary" as determined by the courts. Section 3(m) does require that the conditions be "customary" as determined by the employers in the industry. Furthermore, there is nothing in the Act or the regula-

tions which requires the facilities furnished to be "necessary" or "an integral part of the job".

*Intraworld* and the district court opinion in *Lopez* can be factually distinguished from the instant case. The courts in those cases found that the employees had been misled when they entered into the employment contract. Such is not the case here. The parties have stipulated that Miller's employees are informed of the meal credit when the employee is hired.

The Secretary also argues that § 531.30 requires that each employee must be given an initial choice of receiving his wages entirely in cash. While this interpretation may follow somewhat logically from § 531.-30, it does not comply with § 3(m) as amended. The Court has already concluded that § 531.30 is not a valid interpretation of § 3(m).

There is also an additional reason why the continuing choice argument made by the Secretary is invalid. Section 3(m) was amended in 1961 to give the Secretary the power to regulate the use of board, lodging and other facilities as wages on the basis of the average cost to similarly situated employers. This procedure is a pragmatic one because it would be very difficult for the employers or the Secretary to determine the cost of what each employee actually eats at each meal. However, the Congressional intent is clear. If Congress had intended for each employee to have a continuing choice of accepting a meal or receiving cash, averaging as provided for in the Act would never be appropriate.

█ Therefore, for the above reasons, the Court finds that Miller Properties, Inc. is not in violation of § 3(m) of the Fair Labor Standards Act of 1938. The Court further finds that where, as in this case, an employee voluntarily enters into an employment agreement to receive meals as part of his wage, the employer may receive a reasonable credit for providing food even though all of its employees choose or prefer not to eat.

█ The defendant has also asked that it be awarded costs and fees pursuant to 28 U.S.C. § 2412(a) and (d). Assuming without deciding that this request is not premature, the Court hereby denies defendant's request for attorney's fees and costs. Section 2412(d)(1)(A) provides that a court shall award fees and other expenses to the prevailing party unless the position of the United States was substantially justified or special circumstances make an award unjust. The Court finds that the position of the United States was substantially justified and the circumstances of this case made an award unjust.

This case presents the Court with an unsettled issue. Several courts have already reached a result different from the one the Court reaches today. The Court believes that this fact alone would justify the Secretary's action in filing the suit. In addition, Congress meant for the "special circumstances" to include situations where the Government "advanc[es] in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts." House Report No. 96–1418 p. 11, as set out in 1980 U.S. Code, Cong. & Admin.News, 4953, 4990. Clearly, the Secretary fits this category. For these reasons, the Court will deny Miller's request for attorney's fees.

Therefore:

IT IS ORDERED that plaintiff's suit against the defendant be and it is hereby DISMISSED with prejudice.

IT IS FURTHER ORDERED that Miller Properties, Inc.'s request for cost and attorney's fees be DENIED.

Judgment shall be entered accordingly.