**DAVIS BROTHERS, INCORPORATED, a Georgia Corporation, Plaintiff-Appellant,**

v.

**Raymond J. DONOVAN, Secretary of Labor, et al., Defendants-Appellees.**

No. 81–7775.

United States Court of Appeals, Eleventh Circuit.

March 21, 1983.

Rehearing and Rehearing En Banc Denied June 2, 1983.

Branch & Swann, John D. Marshall, Atlanta, Ga., for plaintiff-appellant.

Stephen A. Nauheim, Richard A. Hibey, Washington, D.C., for amicus curiae National Restaurant Assn.

Power & McDonald, Thomas W. Power, Robert D. McDonald, Washington, D.C., for amicus curiae Foodservice & Lodging Institute.

Mary Helen Mautner, Gregory O'Duden, U.S. Dept. of Labor, Washington, D.C., for defendants-appellees.

Before RONEY and CLARK, Circuit Judges, and TUTTLE, Senior Judge.

RONEY, Circuit Judge:

In meeting the requirements of the minimum wage prescribed by the Fair Labor Standards Act, the appellant restaurant and motel chain claims credit for meals furnished to its employees. Since the employees must take the meals, and are given no option to take cash, the Secretary of Labor disallowed the credit. The district court by declaratory judgment upheld the Secretary. We reverse on the ground that the Secretary has read into the statute a voluntary-choice-by-employee provision that Congress did not require.

The Fair Labor Standards Act (FLSA) guarantees employees covered by the statute a minimum wage. 29 U.S.C.A. § 206. Section 3(m) allows an employer a credit for "the reasonable cost ... to the employer of furnishing [an] employee with board ... if such board ... [is] customarily furnished by such employer to his employees." 29 U.S.C.A. § 203(m). This appeal presents a legal question: does this credit apply only if workers are continually given the option to take cash rather than the meal provided. The parties have stipulated to the facts. Appellant Davis Brothers operates restaurants, featuring primarily smorgasboard and cafeteria-style service, as well as motels. Up until a few years ago, Davis Brothers paid most hourly employees at least the full minimum wage in cash without deducting for food provided by the restaurants. Employees had the option to purchase meals from their employer at less than the retail price. In January 1980, however, Davis Brothers began requiring all non-managerial employees to take part of their compensation in the form of meals. Only workers who for medical reasons could not eat the food offered were paid the full minimum wage in cash. For all other hour-

ly employees, participation in the meal credit plan became a condition of employment which reduced the cash component of their wages 25–35 cents per hour.

In March 1980, the Department of Labor informed Davis Brothers that it was not entitled to credit because the meal plan was mandatory. Although the Department did not specify how frequently employees have to be afforded the choice of taking cash in lieu of meals, it indicated that an employee's acceptance of meals is not really voluntary if it is a prerequisite to employment. In reaching this position, the Department relied on 29 C.F.R. § 531.30 (1981), an interpretative rule promulgated by the agency in 1940. This rule, which construes the word "furnished" as used in the credit provision of the FLSA, 29 U.S.C.A. § 203(m), provides in pertinent part: "[n]ot only must the employee receive the benefits of the facility for which he is charged, but it is essential that his acceptance of the facility be voluntary and uncoerced."

The legality of the Secretary's choice requirement is a question of first impression for this Court. In addition to the district court whose judgment is reviewed here, two other district courts have upheld the Secretary's position: *Morrison, Inc. v. Donovan*, argued on appeal with this case and this day decided at 700 F.2d 1374 (11th Cir. 1983), and *Marshall v. New Floridian Hotel, Inc.*, 24 Wage & Hour Cas. (BNA) 530 (S.D. Fla.1979), *aff'd on other grounds sub nom., Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 473 & n. 8 (11th Cir.1982) (recognizing that substantial questions exist concerning the validity of the Secretary's position). Another district court has reached the opposite conclusion. *Donovan v. Miller Properties, Inc.*, 547 F.Supp. 785 (M.D.La., 1982).

■ Section 3(m) of the statute provides that wages include the reasonable cost of meals "customarily furnished" to employees. Through its interpretative regulation, the Secretary of Labor has in effect construed "customarily furnished" by the employer to mean "voluntarily accepted" by the employees. We fail to discern any basis for this construction. Congress is presumed to use words in their ordinary sense unless it expressly indicates the contrary. *Addison v. Holly Hill Fruit Products*, 322 U.S. 607, 617–18, 64 S.Ct. 1215, 1221–22, 88 L.Ed. 1488 (1944) (construing a different provision of the FLSA); *Tennessee Coal, Iron and Railroad Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598, 64 S.Ct. 698, 703, 88 L.Ed. 949 (1944) (same). The FLSA does not define customarily furnished or otherwise indicate that the phrase is being used in an unusual way. Bound by the ordinary meaning of the terms, two courts seemingly have construed customarily furnished to mean regularly provided. *Melton v. Round Table Restaurants, Inc.*, 20 Wage & Hour Cas. (BNA) 532, 534 (N.D.Ga.1971); *Donovan v. Miller Properties, Inc.*, 547 F.Supp. at 788. We agree. The plain language of section 3(m) focuses on the actions of the employer, not of his employees.

■ Perhaps aware that the literal language of section 3(m) does not support his position, the Secretary relies on the legislative purpose behind the FLSA. Congress decided to guarantee workers a minimum wage to prevent exploitation through the superior bargaining position often held by employers. *See Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706–707 & n. 18, 65 S.Ct. 895, 902 & n. 18, 89 L.Ed. 1296 (1945). According to the Secretary, an employer exploits his superior economic power, and hence defeats the intent of the Act, when he forces an employee to accept part of his wages in a form not desired. This argument ignores the safeguard built into section 3(m) by Congress which prohibits an employer from profiting from his bargaining edge. An employer cannot deduct from the cash component of wages more than the "reasonable cost" of the meal as determined by the agency. 29 U.S.C.A. § 203(m). *Cf. Walling v. Peavy-Wilson Lumber Co.*, 49 F.Supp. 846, 862 (W.D.La.1943) (Congress

limited the credit to the reasonable cost of the meals to prevent employers from circumventing the minimum wage law and "profiteering" through excessive deductions from cash wages for facilities provided).

■ In a second argument based on legislative intent, the Secretary notes that Congress wanted the individual employee to enjoy "the freedom . . . to allocate his minimum wage among competing economic and personal interests." *Brennan v. Heard,* 491 F.2d 1, 4 (5th Cir.1974). According to the Secretary, the employee loses this freedom if his employer can force him to accept his compensation in a form other than cash. The Secretary's reliance on *Heard* and the general legislative intent behind the FLSA is misplaced. The FLSA normally requires employers to pay their workers in cash but, as the *Heard* court noted, section 3(m) is an express exception to this rule. *Brennan v. Heard,* 491 F.2d at 3 n. 2. *See also Brennan v. Veterans Cleaning Service, Inc.,* 482 F.2d 1362, 1369 (5th Cir.1973). Congress apparently recognized and decided to preserve the custom in many industries, including the restaurant business, of compensating employees in part through food and lodging. *See* 112 Cong.Rec. 11,378 (1966) (comments of Congressman Gurney during debate prior to Congress' amending the FLSA to cover the restaurant industry); 83 Cong. Rec. 7408 (1938) (comments of Congressmen Crawford and O'Malley during debate prior to Congress' enacting the original FLSA). The Secretary has failed to cite any passage in the statute or legislative history that even suggests Congress intended to make the statutory exception to the payment of cash wages any different from the customary practice, by making employee choice a prerequisite.

The Secretary notes that a few courts have relied on the voluntary and uncoerced standard promulgated in 29 C.F.R. § 531.30 (1981) in denying employers credit for facilities they provided their workers. *See Marshall v. Intraworld Commodities Corp.,* 24 Wage & Hour Cas. (BNA) 860, 864 (E.D.N.

Y.1980); *Hodgson v. Frisch Dixie, Inc.,* 20 Wage & Hour Cas. (BNA) 167, 171 (W.D. Ky.1971), *aff'd,* 469 F.2d 82 (6th Cir.1972). These cases are readily distinguishable from the present action. *Frisch Dixie* and *Intraworld* concerned grossly inadequate facilities for which employers sought excessive credit. In *Frisch Dixie,* for example, the employers deducted more than the cost of the meals furnished and did not pay employees at all for the meal period even though they often were required to work while eating. The employers required the employees to accept the meal apparently to ensure their availability for uncompensated labor during their meal period. *Frisch Dixie,* 20 Wage & Hour Cas. at 170–71. In *Intraworld,* the employer took advantage of an uneducated alien, requiring him to work 13½ hours per day, six or seven days a week while paying him little more than room and board. *Intraworld,* 24 Wage & Hour Cas. at 863–64. Similarly, in the case that evidently prompted the agency to promulgate the voluntary and uncoerced standard, *Williams v. Atlantic Coast Line Railroad Co.,* 1 Wage & Hour Cas. (BNA) 289 (E.D.N.C. 1940), the employer required workers to live in substandard accommodations including boxcars, never informed them that the "housing" was part of their wages, and deducted a highly inflated amount from cash wages. As one might expect, the court denied the employer any credit. *Id.* at 291, 293–95.

The record does not reveal any comparable incidents of employee exploitation by Davis Brothers. Workers have been informed of the meal credit plan from the very beginning. The Secretary has not established or even argued that the company has deducted more than the actual cost of the food, has provided unpalatable or nonnutritious meals, or has in any other way denied its employees the full value of their minimum wage. The credit is not for the retail value of the meals, but is limited to the reasonable cost to the employer of providing the meals. 29 U.S.C.A. § 203(m).

A number of courts have awarded credit for facilities provided even though the em-

ployers did not grant their workers a continuing choice between cash and the facilities. In *Lopez v. Rodriguez,* 668 F.2d 1376 (D.C.Cir.1981), the D.C. Circuit avoided holding the voluntary and uncoerced standard illegal by narrowly interpreting it in the context of a job, such as a live-in domestic, that cannot be performed without the employee's partaking in the facility. In this situation, the D.C. Circuit construed the agency regulation as merely requiring that the employee voluntarily accept the job knowing the facility will be part of his compensation. *Id.* at 1380. *See also Tippie v. Affordable Inns,* 24 Wage & Hour Cas. (BNA) 975, 981 (W.D.Okla.1980); *Melton v. Round Table Restaurants, Inc.,* 20 Wage & Hour Cas. at 534.

The parties have proffered a number of policy arguments. The Secretary notes that employees who elect for one reason or another not to eat the meal are disadvantaged by the mandatory meal credit plan. He brings up the unappetizing spectre of a limited menu, fast food operator requiring his employees to consume the same fare day in and day out. Amicus The National Restaurant Association, on the other hand, argues that a voluntary plan will increase administrative and accounting costs. Amicus also stresses that the value of meals, which is not taxable to employees if provided for the employer's convenience, I.R.C. § 119(b)(3)(A) (1981), will become taxable if workers are given the choice to take cash instead. I.R.C. § 119(b)(3)(B)(ii); Treas.Reg. § 119–1(a)(3)(i) (1981). While both sides raise interesting points, the arguments are directed to the wrong forum. *Donovan v. Miller Properties, Inc.,* 547 F.Supp. at 789. Congress, not the judiciary, is empowered to determine this country's minimum wage policy. We hold merely that, as the FLSA currently stands, whether for good or bad, Congress has allowed employers to take a credit on the cash component of their minimum wage obligation for meals regularly provided even if the employees are not given the continuing option to take cash instead.

REVERSED.

CLARK, Circuit Judge, dissenting:

I agree with the majority's reading of 29 U.S.C.A. § 203(m), insofar as the majority has concluded that "customarily furnished" by the employer does not mean "voluntarily accepted" by the employee. However, the majority took its own interpretative step—perhaps smaller than the one it has rejected—when it concluded that Davis Brothers, which until 1980 paid full minimum wage and allowed employees the choice of buying discounted meals, now *"customarily* furnishes" those meals, automatically taking 25 or 35 cents from the minimum wage formerly paid cash in full.

Calling for attention are the last words of the sentence from Section 203(m) quoted by the majority in the opinion's second paragraph. Those words state simply that a wage includes board, ". . . if such board . . . [is] customarily furnished *by such employer to his employees."* (emphasis added). These words convey the ordinary sense that the custom of furnishing board must be specific to the restaurant, cafeteria or food service in question if such board is to be included in the wage. They serve no purpose otherwise. Davis Brothers, having initiated its plan so recently as 1980, had no custom of providing board in exchange for a reduction in cash wages.

In *Tennessee Coal, Iron and Railroad Co. v. Muscoda Local No. 123,* 321 U.S. 590, 645 S.Ct. 698, 88 L.Ed. 949 (1944), cited by the majority, the Supreme Court, in determining that working time in an iron mine should be calculated "portal to portal" (thus including travel time from portal to mine face and back again), examined the mining company's asserted reliance upon "the alleged 'immemorial custom and agreements . . .' which are said to establish 'the "face to face" method as the standard for computing working time in the iron ore industry.'" 321 U.S. at 600, 64 S.Ct. at 704, 88 L.Ed. at 958. The Supreme Court rejected the mining company's assertion of the existence of a custom, stating its approval of the district court's examination as follows in part:

That court [the district court], in making its findings, properly directed its attention solely to the evidence concerning petitioners' iron ore mines and disregarded the customs and contracts in the coal mining industry.

321 U.S. at 601, 64 S.Ct. at 704, 88 L.Ed. at 958.[1] Thus, in the instant case, attention should be directed to evidence concerning the custom at Davis Brothers, not to evidence of the vague habits of the restaurant industry as a whole.

The Secretary, in his defense of a regulation which the majority correctly determined sweeps too broadly, neglected to address the simple meaning of the quoted sentence of the statute. The majority approvingly cites two district court opinions construing "customarily furnished." *Donovan v. Miller Properties, Inc.,* 547 F.Supp. 785 (M.D.La.1982); *Melton v. Round Table Restaurants, Inc.,* Lab.Rep. (BNA), 20 Wage and Hour Cas. 532 (N.D.Ga.1971). However, while both of these district courts rejected the Secretary's position, they also ignored the language of the statute which specifies that the custom be that of the employer in question. The district court in *Donovan v. Miller Properties, Inc.,* stated, without citation, "Section 3(m) does require that the conditions be 'customary' as determined by employers in the industry." 547 F.Supp. at 785. The district court in *Melton v. Round Table Restaurants, Inc.,* noted first that the plaintiff employees, "who may well be considered experts for this purpose, state that it is the custom and the usage throughout the industry to furnish such meals within the work hours"; the court then concluded, "As such, it becomes part of the contract," citing only *Pacific Grape Products Co. v. C.I.R.,* 219 F.2d 862 (9th Cir.1955) (examining custom between fruit canners and buyers). 20 Wage and Hour

Cas. at 534. *Tennessee Coal, Iron and Railroad Co. v. Muscoda Local No. 123* provides the more appropriate way to examine custom in the instant matter.

The legislative history of the Fair Labor Standards Act is inconclusive insofar as whether the custom of the individual employer or the custom of the industry is to be the object of examination. The Senate Report accompanying the Fair Labor Standards Amendments of 1966, by which restaurant employees were brought within the minimum wage coverage, does state:

> It should be noted that at present "wages" include the reasonable cost of board, lodging, and other facilities customarily provided by the employer to his employees. Employee meals are never considered primarily for the benefit or convenience of the employer and thus meals provided to restaurant employees by their employers will be considered part of wages under the provisions of the present law.

S.Rep. No. 1487, 89th Cong., 2nd Sess., reprinted in 2 1966 U.S.Code Cong. & Adm. News 3002, 3015. However, the paralleling House Report does not contain the crucial second sentence of the above paragraph, although it repeats verbatim the first sentence. H.R.Rep. No. 1366, 89th Cong., 2nd Sess. 19. Nor does the conference report address the matter. Conference Rep. No. 2004, 89th Cong., 2nd Sess., reprinted in 2 1966 U.S.Code Cong. & Ad.News 3047.

Thus, in view of the plain language of the statute and the rule of the Supreme Court for examining custom, Davis Brothers, which only recently brought its plan into being, did not customarily furnish board to its employees.

---

1. The case provides further help in this matter of custom:

   The futile efforts by the miners to secure at least partial compensation for their travel time and their dissatisfaction with existing arrangements, moreover, negative the conclusion that there was any real custom as to the workweek and compensation therefor. A valid custom cannot be based on so turbulent and discordant a history; *it requires more than unilateral and arbitrary imposition of working conditions.*

   321 U.S. at 602, 64 S.Ct. at 705, 88 L.Ed. at 958. (emphasis added).