**Alexis M. HERMAN, Secretary of Labor, United States Department of Labor, Plaintiff–Appellant,**

v.

**COLLIS FOODS, INC., Defendant–Appellee.**

**No. 97–6461**

United States Court of Appeals, Sixth Circuit.

Argued April 21, 1999.

Decided May 24, 1999.

Paul Frieden (argued and briefed), U.S. Department of Labor, Office of the Solicitor, Washington, D.C., Theresa Ball, U.S. Department of Labor, Office of the Solicitor, Nashville, TN, for Plaintiff–Appellant.

John C. Duffy, Watson, Hollow & Reeves, Knoxville, TN, Alexander E. Wilson, III (argued and briefed), R. Lindsay Marshall (briefed), Alston & Bird, Atlanta, GA, for Defendant–Appellee.

Before: KEITH, SUHRHEINRICH, and GILMAN, Circuit Judges.

## OPINION

GILMAN, Circuit Judge.

The Secretary of Labor appeals the district court's determination that Collis Foods's meal-credit plan, under which a uniform amount is deducted from each employee's cash wages in exchange for meals, does not violate the minimum-wage provision of the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 (the "FLSA"). For the reasons set forth below, we **AFFIRM** the decision of the district court.

## I. BACKGROUND

### A. Legislative framework

#### 1. Applicable FLSA provisions

The FLSA requires that covered employers pay each of their employees at least the minimum wage set forth in the Act. *See* 29 U.S.C. § 206(a). Section 3(m) of the Act defines "wage" to include "the reasonable cost ... to the employer of furnishing ... other facilities ... customarily furnished by such employer to his employees...." 29 U.S.C. § 203(m). This definition allows employers to pay a portion of the minimum wage in non-cash benefits such as meals or lodging. The provision further states that the fair value of such facilities provided as wages may be based upon the "average cost to the employer ... or average value to groups of employees...." *Id.* Such averages may be "used in lieu of actual measure of cost in determining the wage paid to any employee." *Id.*

#### 2. Interpretive regulations

The Secretary of Labor has promulgated regulations that interpret and implement the FLSA. One such regulation provides that facilities (such as meals) are "customarily furnished" to employees only if their acceptance of such facilities is "voluntary and uncoerced." 29 C.F.R. § 531.30 Another regulation interprets the term "reasonable cost" to mean "not more than the *actual* cost to the employer of the board, lodging, or other facilities customarily furnished by him to his employees." 29 C.F.R. § 531.3(a) (emphasis added). Reasonable cost may not include a profit to the employer. See 29 C.F.R. § 531.3(b). Finally, the regulations provide that employers need not keep itemized records of the cost of furnishing meals to individual employees. *See* 29 C.F.R. § 516.27(a)(2). Instead, employers must maintain records to substantiate the cost of furnishing a *class* of non-cash benefits under § 203(m). *See* 29 C.F.R. 516.27(a).

#### 3. The Field Operations Handbook

The Department of Labor's Field Operations Handbook (the "Handbook") provides in relevant part as follows:

> Reg. 531.30 provides that an employee's acceptance of facilities must be "voluntary and uncoerced." The "voluntary and uncoerced" provision has been rejected in several court of appeal and district court decisions regarding *meals* provided to employees. WH [Wage and Hour Division of the Department of Labor] no longer enforces the "voluntary" provision with respect to *meals*. Therefore, where an employee is required to accept a meal provided by the employer as a condition of employment, WH will take no enforcement action, provided that the employer takes credit for no more than the actual cost incurred.

HANDBOOK § 30.09(b) (1988) (emphasis in original). The regional administrator of WH's Southeast region stated in his deposition that his division does not pursue cases where the voluntariness of a meal-credit program is the sole issue.

Another section of the Handbook provides that "'reasonable cost' [under § 3(m)] cannot exceed the actual cost to the employer." HANDBOOK § 30.05(a). It further states that "an employer may not take a credit where no cost is incurred. For example, when a meal is made available to an employee, but is not consumed, and subsequently is retained in the employer's inventory for service to customers, no credit may be taken." HANDBOOK § 30.05(c).

### B. Stipulations

The parties entered into stipulations of fact that are set forth in the district court's memorandum opinion. Collis Foods operates approximately sixty Waffle House restaurants in four states, including Tennessee. It is subject to the requirements of the FLSA. The company employs about 1200 hourly paid workers, most of whom are cooks or servers. Collis Foods deducts a meal credit from each employee's

cash wages, based upon the number of hours that the employee works in a given day. The following are the amounts that Collis Foods has deducted during the period at issue in this case:

April 12, 1994 to present: $1.40 deducted for each shift of four hours or less; $2.25 for a shift over four hours.

Late 1993–April 12, 1994: $1.40 deducted for each shift of four hours or less; $2.80 for a shift over four hours.

1991–1993: $.35 per hour worked.

Each employee's pay stub reflects the meal-credit deduction.

According to the stipulations of fact entered into by the parties, Collis Foods keeps its meal-credit records as follows:

The cost of food items purchased is recorded on an inventory sheet at each restaurant [which orders its own food]. Each week, each restaurant takes a physical count of all food items and records the food in the inventory at cost. The physical count of the inventory is considered an ending inventory. Food cost is determined by taking the difference between the beginning inventory, adding purchases at cost, and then subtracting the ending inventory. The cost of any food item not in the inventory is treated as food cost and includes food that has been sold to customers, consumed by employees, stolen or spoiled. The total food cost information is provided by each store each week to the corporate headquarters where it is input onto a data base which is used for food cost and expense items in the "Expense Report" and the "Daily Accounting Report" as well as other purposes. Food that is inventory is shown on the company's Balance Sheet as inventory . . .

Accounting treatment of food cost is as follows: food cost is deducted from sales on the company's Profit and Loss Statement and on income tax returns. Specifically, the Profit and Loss Statements show the amount as "Food Costs" and the income tax return show [sic] the amount as "Cost of Goods Sold."

## C. The meal-credit plan

Under the meal-credit plan, employees fill out a guest check, similar to those used for customer orders, to place their orders for meals. They may order any item on the menu for free, except for dinner steaks, pork chops, and chicken, for which they must pay half-price. Employees are encouraged to eat during their shifts, with the policy stating that meals "should be during a slow time and must not interfere with customer service."

Although the meal-credit plan applies to all hourly-paid employees, not all choose to accept Waffle House meals. In addition, several employees responded to the Secretary's interrogatories by stating that Collis Foods only permitted them to eat one meal per shift, even though the plan deducts the cost of two meals per eight-hour shift.

## D. The McCarthy report

In support of its position that its accounting practices comply with the requirements of the FLSA and that its meal-credit plan deducts only the "actual cost" of meals offered to employees, Collis Foods utilized an industry consultant, J. Michael McCarthy. McCarthy prepared a report substantiating Collis Foods's estimate of the actual cost of providing meals.

In order to come up with an estimate, McCarthy selected 18 allegedly representative food items from Waffle House menus used during the period at issue. He then averaged the retail prices of each of those meals during each year in question. McCarthy added the price of a snack and drink to each total, an addition that the district court rejected as unreasonable. He then determined that the reasonable cost to Collis Foods of providing such meals was 90% of the retail price.

The district court also disagreed with the percentage of the retail price that McCarthy chose, but found that Collis Foods's income statements were sufficient

to allow the court to make its own calculations as to the reasonable cost of meals offered to Collis Foods's employees for each of the years in question. In particular, the district court found that for every year except 1992, Collis Foods had actually deducted less than the average reasonable cost from its employees' wages. Finally, it found that Collis Foods had deducted only one cent per hour more than actual cost from wages in 1992, and determined that this discrepancy was *de minimus.*

### E. Procedural background

In September of 1994, the Secretary brought an action against Collis Foods for several alleged violations of the FLSA, accusing Collis Foods of illegally withholding wages owed to employees under the Act. In February of 1997, the parties entered into a consent judgment settling all issues except for the meal-credit deduction.

Both parties then filed cross-motions for summary judgment on this remaining issue. The district court granted Collis Foods's motion, denied the Secretary's motion, and dismissed the remainder of the case. In granting summary judgment in favor of Collis Foods, the district court concluded that the meals at issue were "customarily furnished" to employees within the meaning of the FLSA and that Collis Foods's practice of calculating the average cost of meals offered to employees was permissible under Section 3(m) of the Act. It also found that Collis Foods's records substantiated its estimate of the actual cost of providing such meals.

The Secretary timely filed her notice of appeal. On appeal, she focuses solely on the district court's determination that Collis Foods may deduct the average cost of meals from all employees based upon the number of hours they work, regardless of whether they actually accept the offered meals.

## II. ANALYSIS

**A. § 203(m) permits an employer to deduct the average cost of meals offered to employees regardless of whether the employees accept the meals**

### 1. *Standard of review*

This court reviews the district court's grant of summary judgment *de novo. See Timmer v. Michigan Dep't of Commerce,* 104 F.3d 833, 842–43 (6th Cir.1997). The parties agree that the facts of this case are not in dispute, and that the sole issue before this court is the legal question of whether the FLSA permits Collis Foods to deduct the average cost of a meal from every employee's paycheck on a per-shift basis. We review this legal question *de novo. See Featsent v. City of Youngstown,* 70 F.3d 900, 903 (6th Cir.1995) (stating that when the facts of a case are undisputed, summary judgment is appropriate and the court of appeals is limited to reviewing legal issues, which it does *de novo* ).

### 2. *The FLSA does not give the Secretary the authority to implement a requirement that acceptance of a meal-credit plan be "voluntary and uncoerced"*

The FLSA is silent as to whether employees must be given a choice of whether to accept a meal in lieu of a portion of their minimum wage. In implementing the FLSA, the Secretary attempted to insert this requirement into the Act. *See* 29 C.F.R. § 531.30. When Congress has been silent on an issue, as it was in this case, the courts review an agency's implementing regulations to determine whether they constitute a permissible construction of the statute. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If the regulations are found to be contrary to the intent of the statute, a court need not defer to them. *See id.* at 844, 104 S.Ct. 2778.

The Fifth and Eleventh Circuits have held that the Secretary misconstrued the statute by adding the "voluntary and uncoerced" requirement into the FLSA. *See Davis Brothers, Inc. v. Donovan,* 700 F.2d 1368, 1370 (11th Cir.1983) (holding that because the FLSA focuses on the actions of the employer, not the employee, the Secretary was without authority to require that acceptance of meals be voluntary); *Donovan v. Miller Properties, Inc.,* 711 F.2d 49, 50 (5th Cir.1983) (holding that the Eleventh Circuit's interpretation in *Davis Brothers* was correct and that the "voluntary and uncoerced" language in the regulation was not within the Secretary's FLSA implementation power).

In determining that the FLSA does not require that meals be voluntarily accepted by employees, the Eleventh Circuit in *Davis Brothers* looked to the plain language of the statute. *See* 700 F.2d at 1370. Noting that the voluntariness regulation was an interpretation of the phrase "customarily furnished" in § 203(m), the court stated that the phrase focused upon the behavior of the employer in furnishing the meal, not upon the behavior of the employees. *See id.* The Eleventh Circuit also rejected the Secretary's argument that the legislative intent behind the FLSA safeguarding the interests of employees supported the requirement. *See id.* at 1370–71. In doing so, it noted that although the FLSA does protect employees, the existence of § 203(m) demonstrates that such protection does not extend to guaranteeing that employees will receive their minimum wage in cash. *See id.* at 1371.

Finally, the *Davis Brothers* opinion distinguished a series of district court cases that had invalidated involuntary meal deductions. *See id.* at 1371. In particular, it distinguished *Hodgson v. Frisch's Dixie, Inc.,* 20 Wage & Hour Cas. (BNA) 167, 171, 1971 WL 837 (W.D.Ky.1971), *aff'd,* 469 F.2d 82 (6th Cir.1972). The Eleventh Circuit noted that the district court in *Frisch Dixie* found that the employer had deducted more than the actual cost of meals, had not paid employees during meal periods,

had included a profit for itself, and had implemented the plan to insure the availability of uncompensated labor during meal periods. *See Davis Brothers,* 700 F.2d at 1371. Furthermore, this circuit's *per curiam* opinion in *Frisch Dixie* affirmed the district court on the basis that its findings of fact were not clearly erroneous. *See Frisch Dixie,* 469 F.2d at 82. Neither the district court nor our court addressed the issue of whether the Secretary had exceeded his authority by requiring that the acceptance of meals be voluntary. Following the decisions in *Davis Brothers* and *Miller Properties,* the Wage and Hour Division of the Department of Labor ceased to enforce the voluntariness requirement set forth in 29 C.F.R. § 531.30. *See* HANDBOOK § 30.09(b) (1988).

The Court of Appeals for the District of Columbia Circuit utilized a different rationale in reaching the conclusion that employers need not give their employees an ongoing choice of whether to accept meals in lieu of cash. See *Lopez v. Rodriguez,* 668 F.2d 1376, 1380 (D.C.Cir.1981), involving a live-in housekeeper, where the court held that the employee's initial choice to accept a job whose terms included in-kind compensation satisfied the concept of voluntariness.

In the present case, the Secretary relied upon *Marshall v. New Floridian Hotel, Inc.,* 24 Wage & Hour Cas. (BNA) 530, 1979 WL 1991 (S.D.Fla.1979), in which the district court held that the employer had to give employees the initial choice of whether to accept meals and lodging in lieu of a portion of their cash wages. The Eleventh Circuit, in affirming the decision on other grounds, explicitly declined to consider the district court's conclusion of law that the employer should have offered its employees a choice between cash and non-cash wages. *See Donovan v. New Floridian Hotel, Inc.,* 676 F.2d 468, 473 (11th Cir.1982). Instead, the appellate court found that the employer had charged more than the reasonable cost of meals by including a profit and had not substantiat-

ed its costs in any way. *See id.* Furthermore, the Eleventh Circuit's subsequent decision in *Davis Brothers* demonstrates that the *New Floridian* case is no longer good authority for the proposition that acceptance of facilities furnished under § 203(m) must be voluntary.

Based upon the silence of judicial and congressional authorities subsequent to *Davis Brothers* and *Miller Properties,* and from the Secretary's own non-enforcement policy, we conclude that 29 C.F.R. § 531.30 is no longer a viable regulation. Furthermore, we are persuaded by the analysis in those two cases. Nothing in § 203(m) indicates that employers must give their employees a choice of whether to accept meals. Instead, the inquiry focuses on whether the meals are "customarily furnished by" the employer. The use of this passive language in the provision supports the Eleventh Circuit's conclusion that § 203(m) looks to employer, not employee, behavior. Finally, to the extent that an employer's power to force employees to accept non-cash benefits in lieu of cash wages puts the employees at risk of exploitation, the FLSA protects against that risk by prohibiting employers from including a profit in their calculation of the reasonable cost of the meals furnished. *See* 29 C.F.R. § 531.3(b). The district court therefore correctly concluded, as a matter of law, that Collis Foods's meal-credit plan was valid even though its employees have no choice but to accept the plan.

3. *Requiring the cost of meals to be deducted individually is inconsistent with the conclusion that the meal-credit plan need not be voluntary*

■ On appeal, the Secretary does not directly argue that this court should impose a voluntariness requirement upon Collis Foods. Rather, she focuses upon the requirement in § 203(m) that employers charge no more than the "reasonable cost" of non-cash benefits furnished in lieu of cash, and upon the interpretive regulation that defines "reasonable cost" as "actual cost." *See* 29 C.F.R. § 531.3(a)

(1998). The Secretary asserts that Collis Foods's practice of deducting the cost of an average Waffle House meal from the paycheck of every employee on a per-shift basis regardless of whether the employee consumes such a meal violates the statute and the interpretive regulation.

We find this argument unpersuasive because it is logically inconsistent with our conclusion that voluntariness is not required under § 203(m). Simply stated, if Collis Foods may only deduct the cost of such meals as employees choose to take, then employees have a *de facto* choice of whether to receive their wages in cash or in meals. As discussed above, the Secretary lacks the authority to impose such a requirement upon employers (this is true under both the Fifth and Eleventh Circuits' analyses and under the D.C. Circuit's reasoning that the choice of whether to accept a job whose compensation includes non-cash wages satisfies the requirements of the FLSA).

We hold that the § 203(m) meal deduction (for "the reasonable cost ... to the employer of furnishing ... other facilities ... customarily furnished by such employer to his employees ....") is not dependent upon proof that such meals are actually consumed by all of the employees. By focusing instead on the cost to employers of the meals that they customarily make available to their employees, we produce a result that is consistent both with invalidating the voluntariness requirement and with the FLSA's policy of preventing employers from exploiting § 203(m) deductions for profit.

4. *The meals at issue are "customarily furnished" by Collis Foods*

The district court held that Collis Foods's meal-credit plan complied with § 203(m)'s requirement that the meals at issue be "customarily furnished" by the employer. This conclusion consisted of two separate analyses. First, the district court concluded, as a matter of law, that the involuntary nature of the meal-credit

plan does not render it invalid. As discussed above, we hold that this conclusion was correct.

■ Second, the district court addressed the Secretary's argument that alleged inconsistencies in the enforcement and implementation of the meal-credit plan render the plan "hypothetical," not customary. In addressing this issue, the district court noted that there is little authority interpreting the term "customarily furnished." It noted, however, that the validity of the plan would be doubtful if employees did, in fact, have to pay for meals that were supposed to be furnished to them free of charge. The district court then made the factual determination that the meal-credit plan was not hypothetical. In particular, it observed that out of 376 former employees deposed on the issue, only three stated that they had paid full price for their meals.

■ We review the district court's findings of fact under a "clearly erroneous" standard. *See United States v. McDonald,* 165 F.3d 1032, 1034 (6th Cir.1999). In light of the evidence that the vast majority of the employees were not improperly made to pay for meals, the district court's determination that the meals are "customarily furnished" to employees was not clearly erroneous. Furthermore, because the Secretary does not directly raise this issue on appeal, we have no reason to disturb this ruling by the district court.

## B. Collis Foods's record-keeping practice complies with the requirements of the FLSA

### 1. Lack of voluntariness

The Secretary further alleges that Collis Foods did not comply with the FLSA's record-keeping requirements. She argues that Collis Food's estimates bear no relationship to the actual cost of the meals furnished because Collis Foods credited the estimated cost against employees' wages on a uniform basis, regardless of the amount of food that its employees in fact consumed. The Secretary reasserts her position that certain employees were prevented from eating their allotted meals while working or could not eat the food served by Waffle House. As previously discussed in Part II.A.2. above, however, employee choice under a meal-credit plan is not required by the FLSA. Therefore, to the extent that the Secretary's argument regarding Collis Foods's record-keeping practice simply reiterates her position that the meals must be voluntarily accepted, we reject this contention. To the extent that the Secretary's argument regarding record-keeping restates her position that Collis Foods's prevented the meals from being "customarily furnished," we reject this argument as well. *See* Part II.A.4. above.

### 2. Lack of itemization

■ The Secretary also argues that the records that Collis Foods kept with regard to the meal-credit plan are insufficiently itemized to substantiate its estimate of the actual cost of the meals provided to its employees. She states that "Collis's method of deducting the cost of meals simply did not bear any credible relationship to the cost of the food actually ordered by the employees."

The FLSA's interpretive regulations require that employers keep individual records of deductions from employees' salaries on a weekly basis. *See* 29 C.F.R. § 516.27(b)(1). However, "[n]o particular degree of itemization is prescribed." *See* 29 C.F.R. § 516.27(a)(2). The regulations explicitly state that "[s]eparate records of the cost of each item furnished to an employee need not be kept." *See* 29 C.F.R. § 516.27(a).

There is no dispute that Collis Foods showed the meal-credit deduction on the weekly paycheck of each of its employees. The company also maintained records of the cost of all of the food it purchased, whether such food was for consumption by employees or by customers. Such records were made available to the Secretary and were used by McCarthy, the expert witness who prepared a report supporting the meal-credit plan.

The Secretary argues that Collis Foods should have kept records of the cost of each food item provided to employees. She acknowledges that neither the statute nor the interpretive regulations call for such itemization, but relies instead upon a provision in the Handbook that states that "when a meal is made available to an employee, but is not consumed, and subsequently is retained in the employer's inventory for service to customers, no credit may be taken." HANDBOOK § 30.05(c). Relying upon this provision, the Secretary argues that Collis Foods must keep a record to justify deductions that are limited to those meals actually taken.

We find this argument unpersuasive. First of all, the Handbook provision runs counter to our conclusion that there is no voluntariness requirement in § 203(m). Second, the plain language of the Secretary's own interpretive regulations states that "[n]o particular degree of itemization is prescribed." 29 C.F.R. § 516.27(a)(2). Third, as discussed more fully below, § 203(m) itself permits employers to utilize the average cost to themselves or the average value to their employees as a measure of reasonable cost. Given that § 203(m) does not require deductions from wages to reflect the itemized cost of non-cash benefits provided to individual employees, an interpretation requiring that records of such costs be kept would be unjustified.

Finally, Collis Foods noted that its representatives had asked Department of Labor officials for guidance in record-keeping on a number of occasions. These officials were unable to articulate a particular record-keeping standard, and at no time said that Collis Foods should have retained the guest checks from employee meals in order to comply with the FLSA (which is the Secretary's current position). The fact that the Wage and Hour Division's own employees did not believe that the FLSA provisions required such itemization further undermines the Secretary's position on this issue.

### 3. Collis Foods reasonably substantiated its estimated cost of providing meals

Although employers are not required to account for each and every food item offered to or accepted by their employees, the burden of proving that a deduction from wages represents the reasonable cost of the meals furnished is on the employer. *See New Floridian Hotel,* 676 F.2d at 475. "[A]n employer's unsubstantiated estimate of his cost, where the employer has failed to comply with the record-keeping provisions of the FLSA," does not satisfy this burden of proof. *See id.* As noted above, however, Collis Foods has complied with the record-keeping provision of the FLSA. We thus reject the Secretary's argument that Collis Foods has not substantiated the cost of meals furnished to its employees.

Section 3(m) of the FLSA states that the fair value of meals provided as a portion of wages may be based upon the "average cost to the employer ... or average value to groups of employees...." *Id.* Such averages may be "used in lieu of actual measure of cost in determining the wage paid to any employee." *Id.* In order to estimate the average cost of meals provided to Collis Foods's employees, the company provided McCarthy with records of the cost of food that it purchased, along with records of its other operating costs. The district court, although it disagreed with McCarthy's method of calculating the cost of the average meal, reviewed the records on its own and found that the average cost of a meal under the meal-credit plan was greater than the amount of the wage deduction that Collis Foods took for all of the years in question but one (and as to that one year the overage was found to be *de minimus* ).

On appeal, the Secretary does not contest the district court's independent finding that Collis Foods deducted no more than the average cost of a meal. Instead, she asserts that the practice of deducting the average cost is itself impermissible.

As noted throughout this opinion, however, we reject this argument. Because the Secretary does not appeal the district court's independent calculation of actual cost, she has no basis for attacking the conclusion that the average cost, as calculated by the court, was higher than the deduction taken.

### III. CONCLUSION

For all of the reasons stated above, we **AFFIRM** the decision of the district court.